UNITED STATES of America, Plaintiff-Appellee,

v.

Abdon DELGADILLO–VELASQUEZ, Defendant-Appellant.

No. 87–5158.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1988.

Decided Sept. 1, 1988.

**1294**

Steve Cochran, John P. Martin, Deputy Federal Public Defenders, Los Angeles, Cal., for defendant-appellant.

William C. Price, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, NELSON and CANBY, Circuit Judges.

NELSON, Circuit Judge:

## BACKGROUND

Appellant was indicted for possession with intent to distribute marijuana and cocaine in violation of 21 U.S.C. § 841(a)(1). Appellant filed a motion to suppress evidence and statements. The district court denied the motion. We reverse.

### 1. *Pre–Arrest Information.*

Inspector Richardson of the United States Marshal Service received a tip from Customs Agent Brown. Brown related to Richardson that a "reliable, confidential informant" told Brown that Ricardo Alvarado–Coronado ("Alvarado"), a known fugitive wanted for drug smuggling, lived at 1330 Wilmington Blvd., apartment number 3, in Wilmington, California. The customs agent indicated that the fugitive was using the name Abdon Delgadillo and that Alvarado had recently told the informant that he possessed three kilograms of cocaine for sale. The marshals obtained a printout on Alvarado, which contained a physical description and confirmed that he had used numerous aliases, including Delgadillo. They also obtained a 20 year-old photograph of the fugitive.

The next day, the agents conducted surveillance of the apartment building and photographed a Latin male at the building. A comparison of this photo with Alvarado's photo was inconclusive. Three days later the agents again conducted surveillance on the apartment building. They observed a Latin male leave apartment three, walk to the sidewalk, look around and check his watch. After a drive-by in the surveillance van, the agents could not determine that this person matched the Alvarado photograph. In fact, the person in question was appellant, Delgadillo–Velasquez, who was not the fugitive Alvarado.

The agents then saw another van drive up and park. Two men emerged carrying briefcases and met appellant. They all entered apartment three. About fifteen minutes later, one of the visitors left the apartment, looked around, went to a nearby store and then returned to the apartment. Fifteen minutes later all three men left the apartment. The agents, believing that they were intercepting a drug sale, approached the men with their weapons drawn, and ordered them to halt and lie face down on the street. They were handcuffed, searched for weapons, and their briefcases were searched. The agents told the three men that they were under arrest and administered *Miranda* warnings in Spanish.

### 2. *The Searches.*

Immediately after the arrest, two agents, Richardson and Maloney, went to apartment three. The door was slightly ajar and

the marshals announced their presence, heard unidentifiable noises, entered and made a protective sweep of the premises, looking for other persons. They found marijuana in a closet. They discovered that the noises had been made by caged birds in the apartment.

Upon return to the arrest scene they told appellant to accompany them to the surveillance vehicle, separating appellant from the other two men. During this time other agents had discovered from the landlord that appellant's name was Abdon Delgadillo–Velasquez and that he rented apartment three. At the police van, appellant was asked in rudimentary Spanish for consent to search the apartment. When he indicated assent, Richardson called over a Spanish-speaking agent (Vasquez) who asked him for consent to search again. Appellant was unhandcuffed. Appellant said that he would consent, and added that the marshals would find cocaine and marijuana in the apartment. Vasquez told appellant that he would need to sign a consent form, and Vasquez translated the form to appellant. The consent form states that a defendant need not consent and if a defendant does not consent, the officers will obtain a warrant before searching. Appellant signed a consent form printed in English. The agents entered the apartment and found two kilograms of cocaine in addition to the marijuana already discovered.

Appellant entered a conditional guilty plea to Count One, possession with intent to distribute cocaine, Count Two of the indictment was dropped, and appellant was sentenced to five years imprisonment. Appellant is currently in custody.

The district court found that the May 10th seizure was either an arrest for which probable cause existed or an investigatory detention, supported by probable cause at the time the detention ripened into an arrest. The court also found that the second warrantless search was consensual and untainted by any prior improprieties. We disagree because we conclude that the May 10th encounter constituted an arrest lacking probable cause and that the second

search was not consensual given the prior illegal arrest. Therefore, all evidence must be suppressed.

## DISCUSSION

### I. *Probable Cause to Arrest Delgadillo–Velasquez.*

#### A. Standard of Review.

The government bears the burden to show that a warrantless seizure does not violate the Fourth Amendment. *United States v. Al–Azzawy,* 784 F.2d 890 (9th Cir.1986), *cert. denied,* 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1987). We review the district court's finding of probable cause de novo. *United States v. Fouche,* 776 F.2d 1398, 1402 (9th Cir.1985). The district court's findings of fact are reviewed for clear error. *Al–Azzawy,* 784 F.2d at 893.

#### B. Seizure versus Arrest.

Appellee argues that the seizure was merely an investigatory *Terry*-type stop and not an arrest. The agents' conduct at the time of arrest as well as an objective evaluation of the coerciveness of the approach both refute this contention. The agents approached with weapons drawn, cried halt, and required the three men to lie face down in the street while they were handcuffed. The agents told the men that they were under arrest and then read them the *Miranda* rights.

The show of force and detention techniques used in this context are indistinguishable from police conduct in an arrest. *See United States v. Robertson,* 833 F.2d 777, 780–81 (9th Cir.1987); *see also Dunaway v. New York,* 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979). The agents immediately told the men that they were under arrest. Appellee's contention that the officers believed that they were aborting a drug transaction is irrelevant. The proper focus when determining coerciveness or restraint sufficient to constitute an arrest or detention is not on the subjective belief of the agents. Rather we review the situation from the perspective of the person seized. Clearly, a reasonable

innocent person in these circumstances would not have felt free to leave after brief questioning. *United States v. Pinion*, 800 F.2d 976, 979 (9th Cir.1986), *cert. denied*, 480 U.S. 936, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987); *see Robertson*, 833 F.2d at 780; *see also Florida v. Royer*, 460 U.S. 491, 502, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983). We agree with the district court that appellant was arrested at the time he was seized on the sidewalk outside his apartment.

### C. Probable Cause to Arrest Appellant.

■ Because appellant was arrested when the officers approached, required him to lie face down in the street, and handcuffed him, the Fourth Amendment requirements of probable cause attached at this point. *Royer*, 460 U.S. at 502–03, 103 S.Ct. at 1326–27. Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense. *Pinion*, 800 F.2d at 979; *United States v. Howard*, 758 F.2d 1318 (9th Cir.1985).

The district court found that probable cause existed based on the following information possessed by the marshals at the time of the arrest:

1.  the untested tip from the informant that Alvarado lived at appellant's address and used an alias.

2.  the printout regarding Ricardo Alvarado's criminal record, physical description and use of aliases which included the name mentioned by the informant.

3.  a 20 year-old photograph of the fugitive Alvarado.

4.  a photograph of a Latin male observed at the apartment building on March 7th, which was inconclusively compared with the 20 year-old photograph of the fugitive Alvarado and with appellant's appearance.

5.  the activities of appellant and the two other men outside the apartment on March 10th.

From these facts the district court concluded that there was probable cause to believe that (1) appellant was the fugitive Ricardo Alvarado, and (2) a narcotics transaction was occurring during the March 10th surveillance of the apartment. We reject both of these conclusions. Probable cause requires both a reasonable belief that an offense has been or is about to be committed and that the suspect is the criminal. *United States v. Moses*, 796 F.2d 281, 283 (9th Cir.1986). Probable cause to believe that a drug transaction was taking place rested on the assumption that Ricardo Alvarado lived at apartment three.

■ Without the belief that Alvarado lived in apartment three, the officers knew only that a Latin male exited the apartment, went to the street, checked his watch and looked around. A van pulled up, two men with briefcases exited, met appellant, and they went inside the apartment. One visitor left, went to the store, returned and later they all left the apartment and walked toward the van. Such ambiguous conduct does not establish probable cause. *See Pinion*, 800 F.2d at 980 (ambiguous conduct of a person in proximity to crime scene does not establish probable cause); *United States v. Strickler*, 490 F.2d 378, 380 (9th Cir.1974) (proximity to residence and ambiguous driving and observing activity insufficient to establish probable cause). Without the initial uncorroborated assumptions that Alvarado lived in apartment three or that appellant was Alvarado, the officers are left with known facts that describe a generalized meeting which is just as consistent with appellant's innocence as with suspicious conduct. *See United States v. Sokolow*, 831 F.2d 1413, 1419 (9th Cir.1987), *cert. granted*, ── U.S. ──, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). Without more, the actions observed by the marshals do not constitute "particularized evidence of suspicious criminal activity." *United States v. Erwin*, 803 F.2d 1505, 1511 (9th Cir.1986).

■ The marshals made no attempt to verify that Alvarado lived at apartment three or that appellant was Alvarado. The marshals cannot rely on excusable mistake

cases to establish probable cause because they were not acting pursuant to a warrant.[1] *See Arnsberg v. United States,* 757 F.2d 971, 981 (9th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986) (unreasonable for liability purposes to require arresting officers to take issue with judgment of federal magistrate). Here, the difference lies in the fact that the government relies on observed activities of the *wrong man* to establish probable cause to make the arrest.

Additionally, the reasoning of *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), does not support the government's theory that this was an excusable mistake for the marshals to make. In *Hill,* the defense conceded that the police possessed probable cause to arrest Hill. *Id.* at 799, 91 S.Ct. at 1108. There, the Supreme Court decided that the police could justifiably arrest Miller, who looked "exactly" like Hill, when Miller was present in Hill's residence, a pistol and ammunition were in plain view, and the district court found that the arresting officers acted with a good faith belief that Miller was in fact Hill. *Id.* at 799–801, 91 S.Ct. at 1108–09.

*Hill* is very different from this case. In *Hill,* the officers possessed probable cause not only to believe that Hill had committed a crime, but also that they were in Hill's apartment and that Miller was Hill. They had previously verified the ownership of the apartment and Miller fit Hill's description. The central issue in *Hill* involved whether information taken from Hill's apartment upon a search incident to the arrest of Miller, could be used against Hill. In this case, by contrast, the marshals possessed probable cause to arrest Alvarado. But they had no reason to believe that they were at Alvarado's apartment or that the man they saw was Alvarado.

The government contends that the marshals did have reason to believe that Alvarado was the owner of the apartment because of the information provided by the anonymous tip. However, the district court found that the reliability of the confidential informant was untested, and thus the tip was unreliable. We agree.

Although the Supreme Court has abandoned a rigid test of the information necessary to corroborate an informant's tip, it retained a more generalized requirement of reliability to establish probable cause. *See Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983) (overruling the two-pronged test outlined in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). Here the tip was not reliable because the investigating marshal had no means of knowing from whom it came or the past performance of the informant; the tip did not identify any specific drug transaction or time; and the marshals conducted virtually no independent investigation to validate the tip, except to compare Alvarado's criminal record with the information provided by the tip. The presence of Delgadillo on the alias list of the printout of Alvarado's criminal record was the only factor that corroborated the tip. But this piece of information does not suffice to overturn the district court's finding that the informant was 'untested' and therefore unreliable. *See United States v. Freitas,* 716 F.2d 1216, 1223 (9th Cir.1983). Moreover, the record indicates the informant told the customs officer that Alvarado was using the name Carlos Gonzales; it was the customs officer who informed the marshals that Alvarado's correct alias was Delgadillo–Velasquez.

Viewing the corroboration in the context of the types and amount of readily available information that the marshals could have discovered highlights the shortcom-

---

1. The marshals did not obtain an independent, impartial determination that they had probable cause to arrest *appellant.* The incentives that encourage the use of the warrant process are undermined by the resolution of close cases in favor of law enforcement when the officers do not first obtain a neutral review of the facts and circumstances comprising probable cause be-

fore the arrest. "'[T]he resolution of doubtful or marginal cases [regarding probable cause] should be largely determined by the preference to be accorded to warrants.'" *Illinois v. Gates,* 462 U.S. 213, 237, n. 10, 103 S.Ct. 2317, 2331, n. 10 (1983) (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)).

ings of the agents' actions here. Appellant persuasively argues that the officers could easily have taken steps to identify the tenant of apartment three after the March 6th tip. They did not do so. *Cf. Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 1018 n. 10, 94 L.Ed.2d 72 (1987) (officer "made specific inquiries to determine the identity of the occupants of the third floor premises."). More significantly, the marshals chose not to apply for an arrest or search warrant on the basis of the information contained in the tip. Thus, the tip remained largely without corroboration and could not alone suffice to establish probable cause.

### D. Establishing Probable Cause With Post–Seizure Information.

■■■ The district court, finding in the alternative, considered the post-arrest identification of appellant as information contributing to the establishment of probable cause. An initial seizure cannot be justified by information obtained as a result of that seizure. *Sokolow,* 831 F.2d at 1417, n. 4; *Erwin,* 803 F.2d at 1510 n. 2. Probable cause must exist from facts and circumstances known to the officers *at the moment of arrest.*[2] *Howard,* 758 F.2d at 1320. Therefore we reverse the district court's conclusion that the information found after the arrest was not tainted.

### II. *Exigent Circumstances and the Protective Sweep.*

#### A. Standard of Review.

The issue of exigency is reviewed de novo. *United States v. Salvador,* 740 F.2d 752, 758 (9th Cir.1984), *cert. denied,* 469 U.S. 1196, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985). The district court's findings of fact and determinations as to the credibility of witnesses are reviewed for clear error. *United States v. Perdomo,* 800 F.2d 916, 919 (9th Cir.1986). The government bears the burden of establishing the presence of

exigent circumstances to justify a warrantless search. *United States v. Whitten,* 706 F.2d 1000, 1016 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). "The government bears a heavy burden of demonstrating that exceptional circumstances justified a departure from the normal procedure of obtaining a warrant." *U.S. v. Alvarez,* 810 F.2d 879, 881 (9th Cir.1987) (quoting *United States v. Driver,* 776 F.2d 807, 810 (9th Cir.1985)).

#### B. Lack of Exigent Circumstances to Justify the Sweep.

■■■ The warrantless protective sweep or securing of appellant's residence without consent constitutes a per se unreasonable seizure unless the government demonstrates that it can "fall within certain established and well-defined exceptions to the warrant clause." *Perdomo,* 800 F.2d at 918. Even the existence of probable cause, without more, does not validate a warrantless entry into a *residence. Salvador,* 740 F.2d at 758. *See Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed. 2d 639 (1980). "Exigent circumstances are those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search until a warrant could be obtained." *United States v. Robertson,* 606 F.2d 853, 859 (9th Cir.1979). Moreover, the marshals must have possessed more than a subjective belief that danger existed. In order to admit evidence obtained from a protective sweep the marshals must "point to specific and articulable facts supporting their belief that other dangerous persons may be in the building or elsewhere on the premises." *Whitten,* 706 F.2d at 1014.

Here those facts did not exist. The officers had no information that any other persons were in the apartment on March 10th or that weapons were left in the apartment. Although the officers had formed a suspicion that a drug transaction was oc-

---

**2.** Our case is distinguishable from *United States v. Manuel,* 706 F.2d 908 (9th Cir.1983). In *Manuel,* evidence of probable cause developed after a possibly illegal arrest was held to remove the taint from a subsequent confession. But in *Manuel,* the post-arrest evidence of probable cause was developed independently of the arrest. Here, the evidence of probable cause resulted from the illegal arrest and the subsequent invalid consent to search.

curring, they had no independent knowledge that cocaine remained in the house or that any possible cocaine was in danger of destruction. *See United States v. Driver,* 776 F.2d 807, 811 (9th Cir.1985); *United States v. Kunkler,* 679 F.2d 187, 191–92 (9th Cir.1982). Additionally, this circuit has not yet found exigent circumstances to conduct a warrantless protective sweep when the arrest was effectuated outside the residence. In this case, all persons were immediately handcuffed and searched upon arrest. Appellant clearly presented no risk of flight or danger to the marshals. *Whitten,* 706 F.2d at 1016. The agents had no reason to believe that anyone else remained in the apartment: they had seen three men go in and they arrested all three. In his affidavit, Agent Richardson claimed the search was necessary because the officers believed Alvarado might still be in the house. However, until appellant was fingerprinted following his arrest, the marshals believed appellant was Alvarado. There was thus no particularized evidence supporting the officer's belief that other persons (who might possibly pose a threat to the officers or who might destroy evidence) were inside the apartment or were able to observe the arrest. *Compare United States v. Wulferdinger,* 782 F.2d 1473, 1476 (9th Cir.1986) (officers knew that house was occupied by suspects who were probably involved in drug transaction after they arrested courier proceeding toward house). *See also U.S. v. Hicks,* 752 F.2d 379 (9th Cir.1985); *United States v. Gardner,* 627 F.2d 906, 910 (9th Cir.1980). We agree with the district court's conclusion that no particularized evidence existed supporting the existence of a confederate in the house.

## III. *Voluntary Consent to Search.*

### A. Standard of Review.

The government bears the burden of demonstrating that consent to a warrantless search was voluntary. *United States*

*v. Ritter,* 752 F.2d 435, 439 (9th Cir.1985). Voluntariness is a question of fact and therefore the trial court's determination that consent was voluntary is reviewed for clear error. *Al-Azzawy,* 784 F.2d at 895. The voluntariness of consent is determined from all the surrounding circumstances. *Ritter,* 752 F.2d at 439.

### B. Consent Dependent upon Legality of Initial Arrest.

The mere fact that consent to search is voluntary within the meaning of *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), does not mean that it is untainted by a prior illegal arrest. *See Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed. 2d 416 (1975). Here appellant does not argue that the police coerced or threatened him into consent. The police did not tell Delgadillo that they knew about the marijuana in the apartment. *See United States v. Tingle,* 658 F.2d 1332, 1336 (9th Cir.1981) (defendant told that if she did not confess that she would not see her child for a long time); *Norman v. State,* 379 So.2d 643 (Fla.1980); *State v. Hoven,* 269 N.W.2d 849 (Minn.1978).[3]

Appellant contends that even if the threshold finding of voluntariness for Fifth Amendment purposes is shown, such consent is the fruit of the prior illegal arrest. The Supreme Court set out a four part test to determine whether a confession is unconstitutionally tainted. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). This test also applies to consent to search given after illegal law enforcement activity. *United States v. Taheri,* 648 F.2d 598, 601 (9th Cir.1981). The court should consider: (1) whether *Miranda* warnings were administered prior to the consent; (2) the temporal proximity of the arrest to the confession; (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct. *Brown,*

---

**3.** Appellant contends that the coercive circumstances themselves—that he was under arrest, separated and alone—resulted in coercion. This court has not held that a preceding constitutionally permissible arrest or detention makes an otherwise valid consent coerced. *See United States v. Ocheltree,* 622 F.2d 992 (9th Cir.1980); *United States v. Lemon,* 550 F.2d 467, 471–72 (9th Cir.1977). We decline to do so now.

422 U.S. at 603–04, 95 S.Ct. at 2261–62 (interpreting the requirements of *Wong Sun* ). The government bears the burden of showing admissibility under these factors. *Taheri,* 648 F.2d at 601; *United States v. Perez–Esparza,* 609 F.2d 1284, 1290 (9th Cir.1979).

Applying the *Brown* factors to this case, we conclude that the consent to search was tainted by the initial invalid arrest.[4] Although appellees did administer *Miranda* warnings, that fact alone is not dispositive. Here, the consent was obtained within minutes of the illegal arrest. The amount of time between arrest and consent bears directly on the probability of taint. *Compare, Perez–Esparza,* 609 F.2d 1284 (invalid consent to search vehicle given within three hours); *United States v. Recalde,* 761 F.2d 1448 (10th Cir.1985) (consent was a fruit when given promptly after illegal arrest); *United States v. Thompson,* 712 F.2d 1356 (11th Cir.1983) (consent given immediately after arrest and without intervening circumstances invalid, although there was no flagrant police misconduct); and *United States v. Gooding,* 695 F.2d 78 (4th Cir.1982) (consent occurred as part of same brief, continuous encounter as the illegal search, therefore invalid).

We have previously relied on a subsequent release from custody, an appearance before a magistrate, discussions with a lawyer, and subsequent convictions on unrelated charges as examples of intervening circumstances that are sufficient to break the causal connection between the arrest and consent. *United States v. Wellins,* 654 F.2d 550, 555 (9th Cir.1981) (defendant consulted with attorney prior to consent to search); *United States v. Jones,* 608 F.2d 386, 392 (9th Cir.1979). Here there was no intervening event which dissipated the coercive nature of the illegal arrest.

The purpose of the law enforcement conduct, even if not outrageous or misleading, may not be sufficient to purge the taint. If the purpose of the arrest was to arrest Alvarado or even to interrupt a drug transaction, either purpose was accomplished by the arrest. Therefore, any subsequent search can be categorized as investigatory or expeditionary. *Brown,* 422 U.S. at 605, 95 S.Ct. at 2262 (purpose of the arrest was investigatory or constituted an "expedition for evidence in the hope that something might turn up.")

The manner in which the arrest takes place must also be considered. *Id.* Clearly the arrest here was conducted in a manner calculated to cause at least surprise, if not also confusion and fright. *Id.; United States v. Sanchez–Jamarillo,* 637 F.2d 1094, 1100 (7th Cir.), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79 (1980). However, there seems to be no purposeful illegality in the marshals' actions. *Recalde,* 761 F.2d 1448 (defendant not told of his right to refuse in addition to illegal arrest).

On balance, because the consent was given almost immediately after the arrest without any intervening circumstances which lessen the coercive nature of the illegal arrest, the arrest is not sufficiently attenuated from the consent. Therefore, the consent, even though it meets the threshold determination of voluntariness for Fifth Amendment purposes, is not valid under the Fourth Amendment. *Brown,* 422 U.S. at 605, 95 S.Ct. at 2262.

## CONCLUSION

The seizure of appellant and the other two men constituted an arrest for which probable cause was required. In this case, the informant was untested and the marshals failed sufficiently to corroborate the tip to enable them to rely on it to establish probable cause. Thus, the marshals did not possess probable cause to believe that Alvarado lived in apartment three and the resulting warrantless arrest lacked probable cause. The district court's alternate conclusion that probable cause to arrest was established with information gained pursuant to the arrest is reversed. This court has not allowed a determination of probable cause to be based upon evidence

---

**4.** Whether the invalid protective sweep independently requires a conclusion that consent was tainted is a closer question that we need not address here.

obtained after an arrest, if probable cause was lacking at the time of arrest.

The district court's conclusion that exigent circumstances did not exist to conduct a protective sweep is affirmed. The officers did not possess particularized specific information to believe that an accomplice remained in the apartment, or that any possible accomplice could observe the arrest. Moreover, the consent to search was tainted by the initial illegal arrest. Therefore, the evidence seized and statements made after the illegal arrest should be suppressed. REVERSED.