990 F.2d 1265
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Gerald W. Swims UNDER, Defendant-Appellee.
 No. 92-30128.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 5, 1993.*
Decided April 8, 1993.
 
 Before TANG, KOZINSKI and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Pursuant to 18 U.S.C. § 3731, the United States brings this interlocutory appeal from the district court's order suppressing four statements of the defendant, Gerald W. Swims Under. We affirm in part, and vacate and remand in part.
 
 I.
 
 3
 On September 2, 1990 a fatal one-car accident occurred on the Blackfeet Indian Reservation in Montana. Officials believed Gerald Swims Under to be the driver of the car. Later in the day, authorities surrounded the house of Swims Under's mother, where he was staying. During the initial confrontation, police refused admittance to other household members. The custodial questioning of Swims Under, who apparently had been drinking, began under these circumstances without the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966).
 
 
 4
 The September 2nd questioning continued at a police station where Swims Under had been taken in a police car. The police still failed to give Miranda warnings, even while interrogating Swims Under alone in a room with four officers. Except to say a few words, Swims Under's wife was prevented from seeing or speaking with the defendant. Swims Under remained in jail until his release on September 6th.
 
 
 5
 The government does not challenge the suppression of the two statements made on September 2, 1990. These statements apparently implicated Swims Under as the driver of the car in the accident. On September 4th, an FBI special agent again questioned Swims Under. In the agent's words, he "decided that [he] would reinterview [Swims Under] for the fact I would Mirandize him, [sic] and review the contents of the two previous interviews to see if he chose to change the information he gave me or to deny the information he gave me." The September 4th questioning, in other words, "was a chance to review the two previous interviews."
 
 
 6
 Significantly, the agent did not repeat the questions posed to Swims Under on September 2nd. Instead, the agent asked Swims Under essentially whether his previous statements were correct. In response, Swims Under indicated that he had trouble recalling the September 2nd interview due to the alcohol he had consumed. He did not alter the statements he made on September 2nd. However, the exact content of the September 4th statement is unknown; the district court made no findings.
 
 
 7
 Swims Under was released from custody on September 6th. After his release had been processed, but before he was freed, Swims Under was told that a Montana Highway Patrol officer wished to speak with him. The officer then apparently read Swims Under his rights. Believing cooperation to be the price of freedom, Swims Under made an incriminating statement.
 
 II.
 
 8
 The government asks us to review the district court's suppression order only for clear error. See 9th Cir.R. 28-2.5 ("appellant shall ... identify the applicable standard of review"); see also Oregon v. Elstad, 470 U.S. 298, 314, 318 (1985) (indicating that "finder of fact" is to apply the decision's holding). Under the clearly erroneous standard, reversal is only appropriate if we have "a definite and firm conviction that a mistake has been committed." United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991).
 
 A.
 
 9
 The government contends that the interviews of September 4th and 6th "are sufficiently attenuated from the prior interviews [of September 2nd] to make the statements made by the defendant in the third and fourth instances admissible against him at trial." The government cites Elstad and argues that elapsed time, intervening factors, and the nature of the initial misconduct together show the necessary attenuation.
 
 
 10
 We are unsure of the content of the September 4th statement, and so we remand the case for the district court to make findings. As to the September 6th statement, we disagree with the government's position because additional unlawful police conduct precludes attenuation and also provides an independent basis on which to affirm suppression of the statement.
 
 B.
 
 11
 The record does not give us the exact content of the September 4th statement. It is possible that the government meant to use this questioning to bootstrap into evidence the statements of September 2nd which were unlawfully obtained. Alternatively, the statement may have a legitimate evidentiary purpose apart from circumventing the strictures of Miranda. Because we can discern neither the content of the statement nor the district court's reasoning in suppressing the statement, we remand for further findings.
 
 C.
 
 12
 Regarding the September 6th statement made to the Montana Highway Patrol officer, this was the result of an illegal detention. After Swims Under was held for four days, he was told: "Your papers are here," suggesting that he was free to go. And, in fact, his bail had been posted. At the same time, however, he was told that he could not leave because a Montana Highway Patrol officer wanted to talk to him. Swims Under understood reasonably that his bond would not be honored unless he cooperated. The reading of Miranda rights confirmed to Swims Under that he remained in custody despite having posted bail.
 
 
 13
 We hold that the detention effected by the highway patrol officer was unlawful and that the statement obtained was tainted fruit of an illegal detention. See, e.g., United States v. Perez-Castro, 606 F.2d 251, 253 (9th Cir.1979) ("Evidence obtained as a result of an illegal arrest, which is not sufficiently attenuated from the arrest to purge it of the taint of the illegal act, must be suppressed."); United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1300 (9th Cir.1988) (suppressing defendant's statement, made within minutes of illegal arrest, despite application of Miranda warnings); United States v. Holmes, 452 F.2d 249, 260-61 (7th Cir.1971) (Stevens, J.) (holding that, once a defendant is admitted to bail, the Fourth Amendment generally bars rearrest on same charges), cert. denied, 405 U.S. 1016, 407 U.S. 909 (1972).
 
 III.
 
 14
 Because we can find no clear error in suppressing the statement of September 6th, we affirm this portion of the district court's order. We vacate the remainder of the order and remand the case for further findings regarding the content and reasons for suppressing the statement of September 4th.
 
 
 15
 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 
 TANG, Circuit Judge, Dissenting in Part:
 
 16
 I join that portion of the disposition which affirms suppression of the September 6th statement. I respectfully dissent from the majority's decision to vacate the balance of the district court's order and to remand the case for further findings.
 
 
 17
 The government bore the burden of establishing the admissibility of the September 4th statement. Thus, the government had to show by a preponderance of evidence that admitting the statement into evidence would not sanction violations of either Miranda v. Arizona, 384 U.S. 436 (1966), or the Fifth Amendment. See Colorado v. Connelly, 479 U.S. 157, 168-69 (1986); Lego v. Twomey, 404 U.S. 477, 489 (1972); Collazo v. Estelle, 940 F.2d 411, 420 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 870 (1992). The government failed to meet this burden.
 
 
 18
 The record makes clear that the government meant to use the September 4th questioning to bootstrap into evidence the unlawfully obtained statements of September 2nd. As the FBI special agent stated, the purpose of the September 4th questioning was to "re-interview" Swims Under, after reading him the Miranda warnings, "and review the contents of the [September 2nd] interviews." The district court properly rejected this attempt to circumvent the undisputed suppression of the September 2nd statements.
 
 
 19
 Aside from bootstrapping into evidence the September 2nd statements, the record discloses no other evidentiary basis for admitting the September 4th statement.* The majority believes a remand is appropriate for the government to argue a proper use for this statement. This conclusion is fundamentally flawed.
 
 
 20
 The government had numerous opportunities to show a legitimate use for the September 4th statement. Certainly the statement was the subject of contention at the suppression hearing, yet the government declined to pursue the matter on redirect examination of the FBI agent. The government also declined to file a written response to Swims Under's suppression motion and to make a closing argument at the suppression hearing. Indeed, the government not only had ample opportunity, it also had the obligation to show, if it could, that the statement had a legitimate evidentiary purpose. It failed to do so.
 
 
 21
 So far as I can discern, on remand the district court need only state explicitly what was implicit in its summary grant of the suppression motion: The government cannot cure a Miranda violation by subsequently administering the warnings and having the suspect incorporate his previous statements by reference. In my view, the record abundantly supports such a finding. I regret the majority is unable to draw this obvious conclusion for itself.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 *
 The September 4th statement therefore lacks relevancy and is also inadmissible on this ground. See Fed.R.Evid. 402