12 F.3d 1110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel Oswaldo RENTERIA, Defendant-Appellant.
 No. 93-50114.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 17, 1993.*
Decided Dec. 1, 1993.
 
 Before: SCHROEDER, D.W. NELSON and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Daniel Oswaldo Renteria appeals his conviction following a conditional guilty plea to illegal rentry after deportation in violation of 8 U.S.C. Sec. 1326(b)(2). Renteria contends the district court erred by denying his motion to suppress evidence because he was improperly detained for questioning by Immigration and Naturalization Service ("INS") Special Agents, his warrantless arrest was not supported by probable cause, and his subsequent confession was the fruit of his illegal arrest. We have jurisdiction under 28 U.S.C. Sec. 1291. We remand for further proceedings on the motion to suppress evidence.
 
 
 3
 We review de novo the district court's denial of a motion to suppress evidence, and uphold the district court's underlying findings of fact unless clearly erroneous. United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 498 U.S. 825 (1990). The legality of a seizure is a mixed question of law and fact that we review de novo. United States v. Arias-Villanueva, 998 F.2d 1491, 1501 (9th Cir.1993), cert. denied, 62 U.S.L.W. 3288 (U.S., Oct. 18, 1993) (No. 93-6084).
 
 A. Initial Questioning by INS Agents
 
 4
 First, we must decide whether a seizure requiring an objective basis under the Fourth Amendment occurred when INS agents approached Renteria on a street corner and questioned him. The district court found that prior to his arrest, Renteria voluntarily answered questions put to him by the arresting officers, Agents Haldeman and Carter. Voluntariness is a question of fact determined from all of the surrounding circumstances, and the government has the burden of proving that the consent was voluntary. United States v. Mendenhall, 446 U.S. 544, 557 (1980); Arias-Villanueva, 998 F.2d at 1501.
 
 
 5
 A police officer may approach an individual and question him, provided the exchange is consensual. An exchange is consensual if a reasonable person would feel free to walk away, decline to answer the officers' questions, or otherwise terminate the encounter. Mendenhall, 446 U.S. at 555; Morgan v. Woessner, 997 F.2d 1244, 1252 (9th Cir.1993). Such an encounter is not considered a seizure, and police officers may initiate questioning without a reasonable suspicion that the person approached is engaged in criminal activity. Florida v. Bostick, 111 S.Ct. 2382, 2386 (1991); Woessner, 997 F.2d at 1252.
 
 
 6
 In determining whether an encounter was a consensual exchange or a seizure, the essential inquiry is whether the person stopped reasonably believed that he was free to walk away or to decline to answer the police officer's questions. Mendenhall, 446 U.S. at 544; Woessner, 997 F.2d at 1253. If the officer has restrained a person's freedom of movement "by means of either physical force or a show of authority," a seizure has occurred. Bostick, 111 S.Ct. at 2386 (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)). "Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave, police questioning does not constitute a detention." INS v. Delgado, 466 U.S. 210, 216 (1984).
 
 
 7
 Here, the following facts were adduced by the declarations and testimony of Agents Haldeman and Carter at the suppression hearing. On July 9, 1992, Haldeman, Carter, and four other INS agents were in Los Angeles, where they were seeking to execute arrest warrants for several aliens believed to be illegally in the United States. They had no arrest warrant for Renteria, or any information about him. The agents saw a group of approximately eight Hispanic men gathered under a tree. Haldeman thought he recognized one of them as a previously deported alien, Alvaro Navarez-Carrasco. The suspect, who turned out not to be Navarez-Carrasco, and Renteria were standing next to each other and talking. Accompanied by four other agents, who took up surveillance positions nearby, Carter and Haldeman approached the suspect, identified themselves as police and INS agents, and asked the men standing under the tree to keep their hands where the agents could see them. The agents were armed but did not draw their weapons. Several of the men standing nearby walked away. After questioning the suspect and ascertaining that he was probably not Navarez-Carrasco, but that he had been born in Mexico and had no immigration documents, the agents arrested him.
 
 
 8
 Agents Haldeman and Carter then questioned Renteria. They noticed that Renteria had a tattoo under his eye, which in their experience indicated that he had spent time in prison, and one on his ear, which indicated gang membership. Haldeman asked Renteria where he was from and whether he had ever been in prison. In "broken English," Renteria replied that was from East Los Angeles and denied having served time in prison. Haldeman and Carter did not believe him. They again asked Renteria where he was born, and Renteria admitted that he had been born in Mexico. The agents then asked him for his immigration papers and when he said he had none, they handcuffed and arrested him. After arresting him, they searched him.
 
 
 9
 Renteria's testimony confirmed that most of the other men standing nearby walked away when the INS agents approached the suspect. He also testified that the agents put him up against a fence and searched him before they questioned him, and that he did not feel free to leave once the INS agents began questioning him.
 
 
 10
 The district court implicitly rejected Renteria's testimony that he was searched before he was questioned. This finding is primarily a credibility determination, and is not clearly erroneous. See Arias-Villanueva, 988 F.2d at 1501. The record does not contain any other evidence that the agents used physical force to restrain Renteria prior to his arrest.
 
 
 11
 Whether the officers restrained Renteria by means of a show of authority is, however, a closer question. The fact that other men standing nearby walked away when the agents approached the suspect suggests that Renteria was free to do likewise. This fact alone is not dispositive, however, because Renteria and the suspect were standing together and a little bit apart from the other men when the agents first detained and then arrested the suspect. Renteria may reasonably have believed that both he and the suspect were the objects of an investigative detention. The agents did not draw their weapons and did not handcuff Renteria until they arrested him, but the fact that six armed INS officers participated in the encounter is a display of authority which may have been perceived as intimidating. See Mendenhall, 446 U.S. at 554 ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person ..., or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."). Taking into account all of the circumstances, however, the record does not establish that the agents' display of authority was intimidating to the point that Renteria could reasonably believe that he was not free to leave. See Delgado, 466 U.S. at 216-17; cf. Woessner, 997 F.2d at 1253 (questioning cannot be consensual where person states he does not wish to cooperate). Accordingly, the district court did not clearly err by determining that Renteria initially consented to answer the agents' questions. See Arias, 998 F.2d at 1501 (district court's finding that encounter with police was consensual not clearly erroneous where defendants were in a public place, were not handcuffed, and cooperated with police requests).
 
 B. Probable Cause To Arrest
 
 12
 Renteria also contends that Agents Haldeman and Carter lacked probable cause to arrest him. Probable cause exists when the facts and circumstances known to the arresting officers at the time of the arrest are sufficient to lead a prudent person to believe that the suspect has committed or was committing an offense. United States v. Puerta, 982 F.2d 1297, 1300 (9th Cir.1992); United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1298 (9th Cir.1988). Probable cause to arrest an alien for a criminal violation of illegal entry requires more than evidence that the person being questioned is an alien without immigration documents in his possession. Gonzales v. City of Peoria, 722 F.2d 468, 476-77 (9th Cir.1983) (because an alien may be present in the United States illegally without having entered illegally, arresting officer cannot assume that an alien who admits he lacks proper documents has entered illegally in violation of 8 U.S.C. Sec. 1325; arrest must be supported by additional evidence that arrestee entered without inspection).
 
 
 13
 Renteria admitted to the INS agents that he was from Mexico and had no immigration documents in his possession, and the agents suspected that he was a gang member and an ex-convict because of tattoos on his face.[1] This information was insufficient to warrant the conclusion that Renteria was violating a criminal statute by being in the United States. See Gonzales, 722 F.2d at 476-77; 8 U.S.C. Secs. 1325 (illegal entry), 1326 (illegal reentry after deportation). Accordingly, the district court erred by determining that Agents Haldeman and Carter had probable cause to arrest Renteria. See Gonzales at 476-77.
 
 
 14
 Because the arrest was unsupported by probable cause, we REMAND for the district court to determine in the first instance whether Renteria's confession and any potential in-court identification by the arresting officers was tainted by the illegal arrest. See Brown v. Illinois, 422 U.S. 590 (1975); United States v. Delgadillo-Velasquez, 856 F.2d 1292 (9th Cir.1988). If evidence is suppressed as the fruit of the illegal arrest, Renteria must be provided an opportunity to withdraw his guilty plea pursuant to Fed.R.Civ.P. 11(a)(2).
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In addition, the agents testified that Renteria lied to them initially when he told them he was from East Los Angeles. It is unclear, however, whether the agents had asked Renteria "Where were you born?" or "Where are you from?" The latter could be taken to mean "Where do you live?" The district court made no finding on whether Renteria had lied to the agents