73 F.3d 232
 95 Cal. Daily Op. Serv. 9656, 95 Daily Journal
D.A.R. 16,814
Joyce Lynne ALLEN, Plaintiff-Appellant,
v.
CITY OF PORTLAND; Richard D. Walker, Chief of Police;
George E. Fort, Police Officer, Defendants-Appellees.
 No. 93-35212.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Aug. 22, 1995.*
Decided Dec. 19, 1995.
As Amended Jan. 17, 1996.
 
 Joyce Lynne Allen, Portland, Oregon, Pro Se.
 Harry Auerbach, Deputy City Attorney, Portland, Oregon, for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before: CHOY, SNEED, and FERGUSON, Circuit Judges.
 OPINION
 FERGUSON, Circuit Judge:
 The plaintiff appeals pro se the district court's judgment for the defendants and the denial of her motion for a new trial. The plaintiff brought suit under 42 U.S.C. Sec. 1983 alleging that the defendants violated her civil rights when they arrested her without probable cause, subjected her to excessive force, and deprived her of liberty without due process of law. The plaintiff also asserted state common law claims for false arrest, battery, and negligence. We hold as a matter of law that the plaintiff was arrested without probable cause in violation of her Fourth Amendment rights. The judgment of the district court is reversed and remanded.
 
 I. BACKGROUND
 
 1
 On September 14, 1989, Joyce Allen, her husband Dwight Allen, and their 10-year-old son, Michael Allen, had dinner at John's Meatmarket in Portland, Oregon. Dwight intended to pay for part of the meal with an Entertainment card, which offered a half-price discount. Dwight claims that he told the waiter before the family ordered dinner, that he planned to use the Entertainment card. The restaurant manager, Lanny Blanks, claims that Dwight never mentioned the Entertainment card before the family ordered.
 
 
 2
 After dinner, when the bill arrived, Dwight presented the waiter with the Entertainment card and the waiter refused to accept the card. Dwight asked to speak to the restaurant manager. Blanks, the restaurant manager, informed the Allen family that they could not use the discount coupon because Joyce had one meal and as Dwight and his son had split a meal, the coupon could not be used when meals were shared. Dwight and Blanks then argued about the restrictions on the use of the coupon which were written in the Entertainment book. Dwight left fifteen dollars and the discount coupon to pay for the twenty-five dollar meal. The Allen family then left the restaurant.
 
 
 3
 Blanks called 911 and reported a theft. Despite the fact that the dispute over the bill was between Blanks and Dwight, Blanks reported to the dispatcher that there were three suspects and gave descriptions of Joyce, Dwight, and their son. Officer George Fort and Officer Darrell Miller responded to the call. At trial, Officer Fort testified to what Blanks and a waitress at the restaurant told the officers about the dispute:
 
 
 4
 And they [Blanks and the waitress] quickly related to us that the folks that had been called about had left without paying their full price, the full price on a meal, or something mentioned, I recall, about a coupon being used invalid, incorrectly. And there was a balance of money owed. I don't recall if I knew, at that time, the exact amount, but it did not seem to be a very large amount.
 
 
 5
 Officer Fort further testified that the restaurant manager and the waitress assisted the officers in locating Joyce and her son who had entered a nearby restaurant, Rose's Restaurant.
 
 
 6
 Officer Fort testified that he entered Rose's Restaurant and saw Joyce and her son going into the women's restroom. Officer Fort entered the women's restroom, and after a brief discussion told Joyce that she was under arrest. At trial Officer Fort relayed the following conversation that took place in the restroom:
 
 
 7
 And then she [Joyce] said, "I haven't done anything wrong." I said, "Well, according to the restaurant manager, you have. You have been involved in a theft at the Meatmarket. You didn't pay all that was owed."
 
 
 8
 There was a short discussion then about she acknowledged the fact that they had been there, that there was a dispute over the cost of the meal, and that they had left....
 
 
 9
 I said to her something like, "You are under arrest for theft, and you are going to have to come outside with me."
 
 
 10
 Joyce refused to leave the restroom. Officer Fort took Joyce's arm and told her that she could either walk out with him or he would handcuff her. Joyce did not want Officer Fort to touch her. Officer Fort testified that he attempted to take Joyce's arm and lead her out of Rose's Restaurant, but Joyce jerked her arm away from him. When Officer Fort, Officer Miller, and Joyce finally got outside the restaurant a crowd had gathered. By this time, Joyce was very upset about the arrest and was shouting at the officers.
 
 
 11
 Officer Fort testified that once they were outside the restaurant he reminded Joyce that she was under arrest. After asking where her husband was, Fort told Joyce he wanted her to sit in his car so that he could continue with his investigation. According to Officer Fort, when he grabbed Joyce's arm to escort her to the car she hit him in the chest. Moments later, Officer Fort broke Joyce's arm as he pulled her arm behind her back in an attempt to handcuff her. Dwight Allen arrived on the scene and took his wife to the hospital. Officer Fort never cited Joyce for theft, although he did issue her a citation for harassment because she had hit him.
 
 
 12
 Joyce sued the City of Portland, Officer Fort, and Richard Walker, the Portland Chief of Police[1] under 42 U.S.C. Sec. 1983, claiming that Officer Fort subjected her to an unconstitutional arrest and used excessive force. She also brought pendent state law claims for false arrest, battery, and negligence. In the defendants' answer to the complaint, Officer Fort did not assert the defense of qualified immunity.
 
 
 13
 Before trial, the district judge granted the defendants' motion to bifurcate the trial. The bifurcation order established that Officer Fort's liability and the amount of damages, if any, would be decided in the first phase of the trial. If Officer Fort was found liable, then in the second phase the City's liability would be determined. Under the bifurcation order, the City stipulated it would be responsible under respondeat superior for any compensatory damages, costs, and attorney fees awarded to plaintiff on any claim.
 
 
 14
 After a three-day jury trial, a verdict was returned in favor of the defendants on all counts and judgment was entered for the defendants. Joyce then moved for a new trial, but the motion was denied. Joyce now appeals pro se on several grounds. Because we find that Joyce's Fourth Amendment rights were violated as a matter of law, we do not address Joyce's other claims on appeal.
 
 II. DISCUSSION
 
 15
 "The critical inquiry in a Sec. 1983 action 'is whether the plaintiff has been deprived of a right secured by the Constitution and laws.' " Barry v. Fowler, 902 F.2d 770, 773 (9th Cir.1990) (citing Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979)). The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV. The "reasonableness" of a warrantless arrest is determined by the existence of probable cause. Barry, 902 F.2d at 772. Thus, we must address two issues: 1) whether Officer Fort arrested Joyce; and 2) if so, whether the arrest was supported by probable cause.
 
 A. Arrest
 
 16
 Under the Fourth Amendment there are two categories of police seizures. First, a police officer may seize a citizen for a brief investigatory stop if the officer "has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); See also, Morgan v. Woessner, 997 F.2d 1244, 1252 (9th Cir.1993), cert. dismissed sub nom. Searle v. Morgan, --- U.S. ----, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994). During a Terry stop, police officers are entitled to employ reasonable measures to protect themselves and others in potentially dangerous situations. Allen v. City of Los Angeles, 66 F.3d 1052, 1056-57 (9th Cir.1995). Second, a seizure which is a full-scale arrest, must be supported by probable cause. Morgan, 997 F.2d at 1252. To determine whether a seizure has ripened into a full-scale arrest, the court must consider the "totality of the circumstances." United States v. Del Vizo, 918 F.2d 821, 824 (9th Cir.1990) (quoting United States v. Baron, 860 F.2d 911, 914 (9th Cir.1988), cert. denied, 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 414 (1989)). No one factor is dispositive when evaluating the totality of the circumstances. Del Vizo, 918 F.2d at 824.
 
 
 17
 The Ninth Circuit has established that, "[t]he proper focus when determining coerciveness or restraint sufficient to constitute an arrest or detention is not on the subjective belief of the agents. Rather we review the situation from the perspective of the person seized." United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1295 (9th Cir.1988) (emphasis added). In Delgadillo-Velasquez, the court ruled that the test is whether "a reasonable innocent person in these circumstances would not have felt free to leave after brief questioning." Id. at 1295-96; See United States v. Ricardo D., 912 F.2d 337 (9th Cir.1990); Eberle v. City of Anaheim, 901 F.2d 814 (9th Cir.1990).
 
 
 18
 At trial the defendants argued that the seizure of the plaintiff did not amount to an arrest, but was merely a detention or investigatory stop. Applying the test established in Delgadillo-Velasquez to the present case, we hold as a matter of law that Officer Fort's conduct in the restroom of Rose's Restaurant amounted to an arrest. In the ladies' restroom of Rose's Restaurant, Officer Fort told Joyce that she was under arrest for theft. Clearly, a reasonable innocent person would not have felt free to leave when she was followed into the restroom by a police officer and then told that she was under arrest. Furthermore, it is apparent from Officer Fort's testimony on direct examination that he wanted Joyce to believe she was under arrest so that she would submit to his authority. When questioned by his attorney, Officer Fort testified as follows:
 
 
 19
 Defense Counsel, Mary Danford: When you told her [Joyce] that she was under arrest for theft, what did you mean by that?
 
 
 20
 Officer Fort: What I meant was that she was not free to leave, and that I intended to keep her in my presence until I had finished my investigation, for purposes of identifying her, and to see if a crime had been committed, and then ultimately to issue her a citation to appear in court.
 
 
 21
 Mary Danford: Did you have any intent or did you think you had the right to take her to jail for that?
 
 
 22
 Officer Fort: I knew absolutely I did not have the right to take her to jail for that particular charge.... I did use the term arrest more than once with her, because her behavior was such that I didn't feel she would accept or even hear my explanation of I could detain her for purposes of investigation, identification, ultimately possibly issuing a citation. The word arrest was a word I used and have used in many instances where the right to quote, arrest was not there, but the constructive restraint, if necessary, of a person to get a person to stay where I can interview them is a right and a necessity.
 
 
 23
 (Emphasis added). Officer Fort's investigatory tactic was to deceive Joyce into believing that he had the right to arrest her and that she was not free to leave. Under Oregon law, theft of services valued at less than fifty dollars is a Class C misdemeanor. Or.Rev.Stat. Sec. 164.125(5)(a) (1993). A police officer cannot make a warrantless arrest for this offense unless it occurs in the presence of the officer. Or.Rev.Stat. Sec. 133.310 (1993). Officer Fort admitted that he knew he did not have the legal authority to arrest Joyce.[2] Officer Fort's rationalizations of what he really meant when he told Joyce she was under arrest cannot convert Joyce's arrest into an investigatory stop. Rather, Officer Fort's testimony buttresses the conclusion that a reasonable person would have believed that she was under arrest and was not free to leave after brief questioning.
 
 
 24
 In sum, as a matter of law the plaintiff was arrested in the ladies' restroom of Rose's Restaurant. The second inquiry is whether this arrest was supported by probable cause.
 
 B. Probable Cause
 
 25
 In order to satisfy the requirements of the Fourth Amendment, an arrest must be supported by probable cause to believe that the arrestee has committed a crime. Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). Probable cause must be determined at the time the arrest is made. Facts learned or evidence obtained as a result of a stop or arrest cannot be used to support probable cause unless they were known to the officer at the moment the arrest was made. See Wong Sun v. United States, 371 U.S. 471, 482, 83 S.Ct. 407, 414, 9 L.Ed.2d 441 (1963); Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). "Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th Cir.1988).
 
 
 26
 By its definition, probable cause can only exist in relation to criminal conduct. It follows that civil disputes cannot give rise to probable cause. The Ninth Circuit, as well as the Seventh and Eighth Circuits, have recognized that probable cause can only exist in relation to criminal conduct. Kennedy v. Los Angeles Police Dept., 901 F.2d 702 (9th Cir.1989); Peterson v. City of Plymouth, 60 F.3d 469 (8th Cir.1995); Moore v. Marketplace Restaurant, 754 F.2d 1336 (7th Cir.1985); see also Thomas v. Sams, 734 F.2d 185 (5th Cir.1984).
 
 
 27
 In Kennedy v. Los Angeles Police Dept., 901 F.2d 702 (9th Cir.1989), we held that the district court properly denied the officers' motion for a directed verdict on the existence of probable cause to arrest. At the time of the arrest, the police officers were informed that the plaintiff was holding her former roommate's property as security until the roommate paid her debts. The officers arrested the plaintiff for grand theft. On appeal we held that there was sufficient evidence to support the jury's finding that the police lacked probable cause to arrest the plaintiff. There was no reasonable basis from which anyone could believe that the plaintiff had the specific intent to permanently deprive her roommate of the property. Id. at 706. The court reasoned that: "the jury quite properly concluded that a prudent person would not have believed that Kennedy, who was entangled in an ordinary neighborhood dispute, had committed grand theft." Id. This reasoning and the characterization of the conflict as an "ordinary neighborhood dispute" supports the premise that probable cause cannot arise in the civil context.
 
 
 28
 The Eighth Circuit has also recognized that a civil dispute cannot give rise to probable cause to arrest. In Peterson v. City of Plymouth, 60 F.3d 469 (8th Cir.1995), Peterson brought an action under 42 U.S.C. Sec. 1983 against police officers for violating his Fourth Amendment rights by arresting him in connection with a dispute over the ownership of a snowblower. Peterson's former tenant had left the snowblower in the garage of Peterson's rental property. Peterson believed that he had a right to keep the snowblower because it was abandoned property. The Eighth Circuit held that Peterson was entitled to a judgment as a matter of law on his Fourth Amendment unlawful seizure claim because the officer arrested Peterson when he had knowledge that Peterson lacked criminal intent. Id. at 476-77. The court stated: "Knowledge of Peterson's reasonable and actual claim of right put Officer Ridley on notice that the dispute was a civil matter not involving criminal intent." Id. at 477. (emphasis added).
 
 
 29
 The Seventh Circuit's opinion in Moore v. Marketplace Restaurant, 754 F.2d 1336 (7th Cir.1985), also supports the proposition that probable cause cannot arise in the civil context. The facts in Moore are analogous to the case at bar. In Moore, the plaintiffs brought a civil rights action under 42 U.S.C. Sec. 1983 alleging that they were unlawfully arrested and imprisoned on charges of theft of services from a restaurant. The plaintiffs went to the Marketplace Restaurant for dinner. The plaintiffs consumed the first courses of their meal, soup and salad. After the plaintiffs waited for more than two hours to be served their main course, they left the restaurant without paying. The plaintiffs claimed that before leaving, they offered to pay for the food they had been served, the soup and salad. The manager of the restaurant called the police. The police then went to the campsite where the plaintiffs were staying and arrested them. The trial court granted summary judgment in favor of the defendants. The Seventh Circuit, in discussing the existence of probable cause to arrest, stated:
 
 
 30
 As evidenced by the affidavits and the interrogatories in the record, this case essentially involves a dispute over the amount owed on a restaurant bill. It could almost be characterized as a dispute over whether a breach of contract occurred between the parties as to services and food to be provided. One party is dissatisfied with the services after not being served for two hours, while the other party insists upon performance for the services and the food ordered. One party insists that payment was offered for the consumed food, while the other insists that no offer of payment was made.
 
 
 31
 754 F.2d at 1345 (emphasis added).
 
 
 32
 Applying the reasoning of Moore to the present case, there was no probable cause to arrest the plaintiff because the facts of this case amount to a contract dispute. At the time Officer Fort told Joyce she was under arrest for theft, the only information he had was that the Allen family had eaten at the restaurant, they had offered a coupon to pay for the meal, the restaurant claimed the coupon was invalid, and the family left the restaurant. This was insufficient information to lead a reasonable person to believe that Joyce had committed a crime. In fact, the entire financial transaction at the restaurant and the dispute over the bill were between the husband, Dwight, and the restaurant manager. As in Kennedy and Peterson, the officer lacked any information which would support that Joyce had any criminal intent. This dispute over the validity of a discount coupon was a contract dispute. Such a dispute, which is civil in nature, cannot give rise to probable cause. Therefore, we hold that as a matter of law Officer Fort arrested Joyce without probable cause and in violation of her Fourth Amendment rights.
 
 
 33
 Over thirty years ago, the Supreme Court warned of the danger and the threat to liberty if the requirement of probable cause is not strictly abided by: "The history of the use, and not infrequent abuse of the power to arrest cautions that a relaxation of the fundamental requirements of probable cause would 'leave law-abiding citizens at the mercy of the officers' whim or caprice.' " Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441 (1963) (citations omitted). This case illustrates the dangers of which the Supreme Court warned.
 
 III. CONCLUSION
 
 34
 As a matter of law, the plaintiff was arrested without probable cause in violation of her Fourth Amendment rights. We REVERSE the judgment of the district court on the Fourth Amendment unlawful seizure claim and REMAND to the district court for further proceedings consistent with this opinion. Plaintiff is awarded her costs.
 
 
 
 *
 This case is appropriate for submission on the briefs and without oral argument per Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 [1]
 The claims against the Chief of Police were dismissed because they were barred by the statute of limitations
 
 
 [2]
 A warrantless misdemeanor arrest which violates state law does not implicate the Fourth Amendment unless there is no probable cause. Barry v. Fowler, 902 F.2d 770, 772 (9th Cir.1990)