**Clysly DESALES, et al., Plaintiffs,**

**v.**

**Jeffrey WOO, et al., Defendants.**

**No. C–93–3915 MHP.**

United States District Court,
N.D. California.

Aug. 25, 1994.

Steven R. Yourke, San Francisco, CA, for plaintiffs.

Craig Modlin, Deputy Atty. Gen., San Francisco, CA, for defendants.

### *OPINION*

PATEL, District Judge.

Plaintiffs Clysly Desales, Cayetano Desales and Maria Patria Desales brought this action against defendants Jeffrey Woo, Ronald Lam and Armando Acuna, police officers at San Francisco State University, alleging violation of their civil rights under 42 U.S.C. § 1983. Now before the court is plaintiffs' motion for summary judgment on the issue of liability or, alternatively, summary adjudication of the issues. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

### *BACKGROUND* [1]

On October 21, 1992, Tim Balakovich, the equipment manager at the San Francisco State University gymnasium, contacted the university police department to inform police of a possible firearm inside of a gym locker. According to Balakovich, an unidentified

---

**1.** Unless otherwise noted, all information is taken from facts listed in the Plaintiffs' Amended Statement of Undisputed Facts which are not disputed by the Defendants' Statement of Disputed Facts.

male student had approached him and reported overhearing a conversation between two men in the men's locker room. Reportedly, one man said, "Is that a fifty-seven?" to which the other replied "Yeah." The first man then asked "Is it loaded?" to which the other replied "No. I have the shells in my hand." The unidentified student told Balakovich that he assumed the men were discussing a .357 handgun and ammunition. On October 27, 1992, Balakovich told police that he had again been approached by the same unidentified student who stated that one of the men discussing the handgun had used locker number 291. Balakovich informed police that, according to his records, locker number 291 belonged to plaintiff Clysly Desales, a student at San Francisco State University.[2]

Sometime between 9:50 and 10:05 a.m. on October 29, 1992, plaintiff was approached by defendant police officers in front of his locker in the gym locker room. At the time, plaintiff was changing from swim trunks to street clothes. Defendant Woo ushered plaintiff away from the locker and defendant Acuna handcuffed plaintiff behind his back. Plaintiff was then walked by defendants to a nearby office, where defendant Woo read plaintiff the *Miranda* warnings. Plaintiff did not waive his *Miranda* rights.

At approximately 10:20 a.m., defendants asked plaintiff to sign a consent to search form authorizing defendants to search his gym locker, his car and his residence. Plaintiff signed the release and defendants searched his gym locker and car. In addition, they searched plaintiff's room, which was in the house of his parents, plaintiffs Cayetano and Maria Patria Desales. Plaintiffs allege that defendants searched the entire first floor of the home, while defendants maintain that only plaintiff Clysly Desales' room was searched.

While plaintiff was in custody, he requested permission to make a phone call but was refused. He was also handcuffed for much of the time he was in custody. Plaintiff alleges that he was handcuffed the entire time he was in custody, except for a few minutes when he was uncuffed to sign the release form. Defendants maintain that plaintiff was uncuffed when he entered the office and when he signed the consent form and that he was re-cuffed for the search of his car and his room.[3]

No firearm was found during the searches. Plaintiff was released by defendant Woo at approximately 12:00 noon.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted:

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying portions of the record which show that the nonmoving party has disclosed no "significant probative evidence tending to support the complaint." *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [its] own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

---

**2.** "Plaintiff" refers to plaintiff Clysly Desales unless otherwise noted.

**3.** Defendants' own testimony on this issue, however, is contradictory. For example, in his deposition, defendant Woo testified that plaintiff was handcuffed the entire two hours he was in custody except for five minutes when the consent form was signed. Yourke Dec. 2, Ex. 1 (Woo Dep. at 46:9–47:16; 58:13–59:22).

Although the moving party is not required to support its motion with affidavits or other material, *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552, it does not surmount its burden through conclusory allegations as to the state of the record. The moving party discharges its burden by showing that the nonmoving party has not disclosed the existence of any "significant probative evidence tending to support the complaint." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

The court's function on a motion for summary judgment is not to make credibility determinations. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion.

*DISCUSSION*

There are six major issues to be considered: 1) whether plaintiff Clysly Desales was arrested or detained; 2) whether the arrest was illegal, if plaintiff was in fact arrested; 3) whether plaintiff's consent to search was tainted by the arrest, if the arrest was illegal; 4) whether the search violated the Fourth Amendment, if plaintiff's consent to the search was invalid; 5) whether Cayetano and Maria Patria Desales have standing to sue; and 6) whether defendants can assert an affirmative defense of qualified immunity.

Neither party disputes that defendants were acting in their capacity as police officers employed with the San Francisco State University Police Department when they committed the acts which constitute the basis of this action. Therefore, they were acting under "color of law" for the purposes of section 1983.[4]

## I. Arrest or Detention

### A. Seizure

■■■ Plaintiff alleges that he was unconstitutionally "seized" by defendant in violation of the Fourth Amendment because that seizure amounted to an arrest for which defendants had no probable cause. In evaluating whether a police stop is in fact a seizure, the "essential inquiry is whether the person stopped reasonably believed that he or she was not free to leave." *Morgan v. Woessner*, 997 F.2d 1244, 1253 (9th Cir.1993) (quoting *United States v. Patino*, 649 F.2d 724, 726–27 (9th Cir.1981)), *cert. dismissed, Searle v. Morgan*, —— U.S. ——, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994). The inquiry is "largely a factual one which depends on the totality of the circumstances." *Morgan*, 997 F.2d at 1253. In the instant case, plaintiff has declared that he understood he was not free to leave the custody of the defendants. Clysly Desales Dec. ¶ 5.

The court finds that such a belief was reasonable as a matter of law. Plaintiff was handcuffed soon after being approached by the defendants and, even accepting defendants' version of the facts, was handcuffed for most of the approximately two hours that he was in police custody. During that time, he was read the *Miranda* warning, informed that he was suspected of possessing a firearm, denied a request to make a phone call, transported in the rear of a police car while his car and home were searched, and held in custody at the campus police station. Under such circumstances, it was more than reasonable for plaintiff to believe that he was not free to leave police custody. Therefore, the court holds that the defendants seized plaintiff.

### B. Status of the Seizure

■■■ Defendants maintain, however, that contrary to plaintiff's assertion, the seizure

---

4. Section 1983 provides in relevant part:
  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.
  A claim under section 1983 requires proof of two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988).

did not amount to an arrest but was merely a detention. There are two categories of police seizures under the Fourth Amendment. *Morgan*, 997 F.2d at 1252. First, a police officer may seize a citizen for a brief, investigatory stop if the officer "has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1967); *Morgan*, 997 F.2d at 1252. Second, a seizure may amount to a full-scale arrest, for which probable cause is necessary. *Morgan*, 997 F.2d at 1252.[5]

■ The determination of whether a detention or an arrest has occurred requires an examination of:

> all the surrounding circumstances, including the extent to which liberty of movement is curtailed and the type of force or authority employed.... A *Terry* stop involves no more than a brief stop, interrogation and, under the proper circumstances, a brief check for weapons. Beyond such a brief and narrowly circumscribed intrusion, an arrest occurs, for which probable cause is required.... The ultimate question is whether, in view of all the circumstances, a reasonable person would have believed himself to be under arrest.

*United States v. Robertson*, 833 F.2d 777, 780 (9th Cir.1987); *see also Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

■ In the instant case, the court finds as a matter of law that an arrest of plaintiff occurred. Plaintiff believed himself to be under arrest, Clysly Desales Dec. ¶ 4, and his belief was reasonable under the circumstances. It is undisputed that plaintiff was handcuffed, accompanied by three officers, read his *Miranda* rights and held in custody for close to two hours. While in handcuffs, he was taken in the back of a police car from

school to car to home. A restriction of liberty of this type rises well above the brief stop, interrogation and cursory check for weapons involved in a *Terry* stop and objectively establishes an arrest. *See Robertson*, 833 F.2d at 780.

The Ninth Circuit has held that a "complete restriction, if brief and not excessive under the circumstances, may constitute a valid '*Terry* stop' and not an arrest." *Robertson*, 833 F.2d at 781 (citing *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 447 (1983)). In this case, however, the restriction of plaintiff was not brief and was excessive under the circumstances. Although it is unclear whether plaintiff was frisked, defendants knew that he was not carrying any firearm on his person when they approached him because they observed him changing from swim trucks into street clothes. There is no evidence that plaintiff fought the officers, attempted to flee, used furtive gestures or threatened violence. In addition, plaintiff, a lone individual, was taken into custody by *three* officers. Handcuffing plaintiff was greater restraint than was reasonably necessary under the circumstances and is further demonstration that plaintiff was arrested and not merely detained for a *Terry* stop.

The court also emphasizes that the arrest occurred *before* plaintiff signed the consent to search form. It is undisputed that the form was signed at 10:20 a.m. on October 29, 1992. Plaintiff was approached by police and handcuffed at approximately 10:00 a.m. (defendants allege that plaintiff was approached at 10:05 a.m., while plaintiff alleges he was approached at 9:50 a.m.). Accepting defendants' version of events as true, plaintiff was handcuffed for nearly fifteen minutes before he was uncuffed to sign the consent to search form. During that fifteen minutes, he was taken by three officers to a nearby office

---

5. A third category of stop under the Fourth Amendment, one which does not amount to a seizure, is a consensual exchange. *Morgan*, 997 F.2d at 1252. Police may stop and question a person at any time, as long as that person knows that he or she is free to go at any time. *Id.* (citing *Florida v. Bostik*, 501 U.S. 429, ——, 111

S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). These exchanges "need not be supported by any suspicion that the citizen is engaged in wrongdoing, and such stops are not considered seizures." *Morgan*, 997 F.2d at 1252; *see also United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

where he was read his *Miranda* rights. Because plaintiff was handcuffed and accompanied by three officers, it was reasonable for him to believe that he was under arrest. *See, e.g., Robertson,* 833 F.2d at 780 (petitioner detained at gunpoint for five to fifteen minutes had been arrested).

In *Dunaway,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the Supreme Court found that a petitioner who was not questioned briefly where he was found but rather taken to a police car, driven to a police station, read his *Miranda* rights and questioned in an interrogation room had been arrested. *Dunaway,* 442 U.S. at 212, 99 S.Ct. at 2256. Such actions by the police were in contrast to the types of intrusions which were determined to be *Terry* stops. *Id.* at 210–12, 99 S.Ct. at 2256 (citing *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (weapons frisk on basis of reasonable suspicion held to be *Terry* stop)); *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (order to get out of car after lawful stop for traffic violation and frisk for weapons after bulge observed in jacket constituted *Terry* stop). In *Dunaway,* moreover, the petitioner was not handcuffed when he was taken to the police station for questioning, while the police in the instant case handcuffed plaintiff almost immediately after approaching him and kept him handcuffed until he was released to sign the consent form. Defendants can point to no case authority in which facts even approaching those at issue here have been held to constitute a *Terry* stop.

Defendants contend that there are material issues of fact as to whether the detention constituted an arrest which preclude this court from granting summary judgment on this issue. According to defendants, both the fact that plaintiff was a college student who invoked his *Miranda* rights and requested that the officers move his car so that it would not get a parking ticket raise a genuine issue of fact as to whether plaintiff could reasonably have thought he was being arrested or merely detained for the search. The court finds these arguments to be unavailing. Neither of those facts, when considered against the backdrop of the other undisputed facts

noted above, is sufficient to raise a genuine issue for trial as to whether plaintiff was detained as opposed to arrested. In fact, plaintiff's refusal to waive his *Miranda* rights and his request that defendants move his car tend to point in the other direction, suggesting that he thought himself to be under arrest and unable to get to his car in time to move it.

The *Dunaway* Court concluded that "detention for custodial interrogation—regardless of its label—intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest." *Dunaway,* 442 U.S. at 216, 99 S.Ct. at 2258. The facts here clearly constitute a *Dunaway* "custodial interrogation" that implicates Fourth Amendment protections. Plaintiff was taken into police custody and questioned about the alleged firearm. Defendant Woo himself acknowledged that plaintiff was "in custody." Yourke Dec. 2, Ex. 1 (Woo Dep. at 46:9–46:25). The court finds, therefore, that plaintiff was detained for a custodial interrogation which amounted to an arrest.

## II. *Legality of the Arrest*

■ In order to satisfy the requirements of the Fourth Amendment, an arrest without a warrant must be supported by probable cause to believe that the arrestee has committed a crime. *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). In the instant case, it is undisputed that defendants did not have a warrant to arrest plaintiff. Therefore, the arrest made by defendants must have been supported by probable cause in order to be legal. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Id.* The facts and circumstances must be based on "reasonably trustworthy information" known to the officers. *United States v. Delgadillo–Velasquez,* 856 F.2d 1292, 1296 (9th Cir.1988). In addition, probable cause requires "both a reasonable belief that an offense has been or is about to be committed and that the suspect is the criminal." *Id.* at 1296.

■ Defendants arrested plaintiff pursuant to information provided by an unnamed and unidentified informant. The information given by the tipster was uncorroborated by other evidence. In determining whether an informer's tip provides probable cause sufficient to warrant an arrest, a court must engage in a totality of the circumstances analysis. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Among the relevant factors to be considered are the reliability, veracity, and the basis of knowledge of the informant. *Id.; see also Delgadillo–Velasquez,* 856 F.2d at 1297.

The court finds that, as a matter of law, there was not probable cause to arrest plaintiff. It is undisputed that police never spoke with the informant, nor knew anything about him beyond what they were told by Balakovich. Balakovich himself did not report overhearing the conversation; therefore any information the police relied upon was at least secondhand. At no time did the informant name plaintiff; rather the informant told Balakovich in their second conversation that one of the suspects used locker number 291. Nor, from the facts before this court, does it appear that Balakovich did anything to verify the information. Defendants seem to assert that because the tipster was a student, he was reliable. However, they fail to point out why his status as a student confers upon him any special reliability. As was the case in *Delgadillo–Velasquez,* "the reliability of the confidential informant was untested, and thus the tip was unreliable." *Delgadillo–Velasquez,* 856 F.2d at 1297. Furthermore, the tip was unreliable because, among other things, the officers "conducted virtually no independent investigation to validate the tip" except to observe that the locker fee card showed that locker number 291 belonged to Clysly Desales. *Id.*

Defendants maintain that there is no evidence that the informant gave the tip other than out of his concern for the safety of himself and other users of the gym. That allegation may be true, but it does not vouchsafe the reliability of the uncorroborated tip of an unnamed source. The inquiry is whether or not there was evidence attesting to the reliability and veracity of the informant, not whether there was an absence of evidence attesting to the unreliability or suspect motive of the informant. *See, e.g., Gates,* 462 U.S. at 238, 103 S.Ct. at 2332; *Delgadillo–Velasquez,* 856 F.2d at 1297.

Defendants offer no other evidence that there was probable cause to arrest plaintiff; indeed defendant Woo testified in his deposition that he did not believe that he had probable cause to arrest the plaintiff. Yourke Dec. 1, Ex. 1 (Woo Dep. at 23:12–23:17). Rather, because defendants maintain that the seizure of plaintiff was a *Terry* stop which required only a reasonable suspicion of criminal activity and not an arrest which required probable cause, they argue in their papers that the tip from the informant was sufficient to create a reasonable suspicion which would justify a *Terry* stop. However, they offer no genuine issues of material fact as to probable cause for arrest which would preclude this the court from granting summary judgment on this issue.

Therefore, the court finds that as a matter of law, defendants violated plaintiff's Fourth Amendment rights by arresting him without probable cause.

### III. *Consent to Search*

Because the court has found that the arrest was illegal, it remains to be considered whether plaintiff's consent to the police search of his gym locker, car and room was valid. It is undisputed that the searches were not conducted pursuant to a valid search warrant. There are, therefore, two issues to be considered: 1) whether plaintiff's consent was voluntary for Fifth Amendment purposes; and 2) if so, whether plaintiff's consent to search, though voluntary, was nonetheless constitutionally tainted by the illegal arrest.

### A. *Voluntariness Under the Fifth Amendment*

■ The threshold question is whether plaintiff's consent was voluntary for Fifth Amendment purposes. In determining whether a confession (and by extension, a consent) is voluntary, a court must look to the "totality of all the surrounding circumstances—both the characteristics of the ac-

cused and the details of the interrogation." *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *see also Delgadillo–Velasquez,* 856 F.2d at 1299 (applying standard of *Schneckloth* to consent).

■ Here, plaintiff does not allege that he was threatened or coerced by the officers into signing the consent to search form. *See Delgadillo–Velasquez,* 856 F.2d at 1299. He also does not allege that the defendants physically harmed him in order to convince him to sign the consent to search. Although plaintiff had never had any previous contact with the police, he was a twenty-one year-old college senior who had the presence of mind to turn down a *Miranda* waiver and ask the officers about moving his car. He has testified that although he was "extremely intimidated," he complied with the request because he knew he had "nothing to hide." Clysly Desales Dec. ¶ 11. For these reasons, the court finds that plaintiff's consent passes the threshold requirement of voluntariness for Fifth Amendment purposes.

B. *Validity Under the Fourth Amendment*

■ The fact that consent to search is voluntary under *Schneckloth* "does not mean that it is untainted by a prior illegal arrest." *Delgadillo–Velasquez,* 856 F.2d at 1299. In *Brown v. Illinois,* the Supreme Court developed a four-part test to determine whether a confession given after illegal police conduct is free of constitutional taint. 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). This test also applies to a consent to search given after illegal police conduct. *Delgadillo–Velasquez,* 856 F.2d at 1299 (citing *United States v. Taheri,* 648 F.2d 598, 601 (9th Cir.1981)). In order to decide whether a consent to search is constitutionally tainted by an illegal arrest, a court must consider:

(1) whether *Miranda* warnings were administered prior to the consent; (2) the temporal proximity of the arrest to the confession [or consent]; (3) the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct.

*Delgadillo–Velasquez,* 856 F.2d at 1299 (citing *Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62).

■ In the instant case, it is undisputed that *Miranda* warnings were given prior to consent. That alone, however, is not dispositive. *Delgadillo–Velasquez,* 856 F.2d at 1300; *Brown,* 422 U.S. at 603, 95 S.Ct. at 2261. "The amount of time between arrest and consent bears directly on the probability of taint." *Delgadillo–Velasquez,* 856 F.2d at 1300. Accepting defendants' timetable, plaintiff was approached (and, as the court has concluded, arrested) at 10:05 a.m. and the consent to search form was signed at 10:20 a.m., approximately fifteen minutes after the arrest. Such a short time between arrest and consent suggests that the consent was the fruit of the illegal arrest. *See, e.g., Dunaway v. New York,* 442 U.S. at 218, 99 S.Ct. at 2259 (incriminating statements constitutionally tainted when given less than two hours after illegal arrest); *United States v. Perez–Esparza,* 609 F.2d 1284, 1290 (9th Cir. 1980) (consent was invalid when given three hours after illegal arrest when there were not sufficient intervening circumstances). Any intervening circumstances must be "sufficient to break the causal connection between the arrest and consent." *Delgadillo–Velasquez,* 856 F.2d at 1300. The Ninth Circuit has previously found that "a subsequent release from custody, an appearance before a magistrate, discussions with a lawyer, and subsequent conviction on unrelated charges" are all sufficient intervening circumstances. *Id.* Between the arrest and consent in the instant case, plaintiff was led to a nearby room in handcuffs by three officers. He was read his *Miranda* rights and then asked to sign the consent to search form, which he did. There were no intervening circumstances of the type necessary to break the causal connection. *See, e.g., Dunaway,* 442 U.S. at 218, 99 S.Ct. at 2259 (no intervening circumstances found after illegal arrest when, before making inculpatory statements, petitioner was taken from a neighbor's home in police car and questioned after having been read his *Miranda* rights); *United States v. Thompson,* 712 F.2d 1356, 1362 (11th Cir.1983).

Finally, the flagrancy and purpose of the police misconduct must be evaluated. The purpose of the conduct was to determine whether or not plaintiff had brought a handgun to the university. The actions of the police in attaining this goal, however, amount to flagrant misconduct. In *Dunaway*, the Court found flagrant misconduct where the petitioner was admittedly seized without probable cause and confessed without a significant intervening event. *Dunaway*, 442 U.S. at 218, 99 S.Ct. at 2259. The petitioner had not been threatened or abused and he had been read his *Miranda* rights, but the Court still held that the illegal conduct, combined with the short time between arrest and confession and a lack of intervening circumstances revealed that the confession had been obtained by "exploitation of the illegal arrest." *Id.* at 218, 99 S.Ct. at 2260.

The conduct here is even more egregious than that in *Dunaway*. As in *Dunaway*, the arresting officer admitted that there had not been probable cause to arrest plaintiff. Yourke Dec. 1 Ex. 1 (Woo Dep. at 23:12–23:17). Furthermore, in contrast to *Dunaway*, the police in the instant case handcuffed plaintiff almost immediately after approaching him and kept him handcuffed until he was released to sign the consent form. He was cuffed for much of the time after the consent as well. Defendants consistently maintain in their papers that plaintiff was handcuffed for "officer safety," but, as discussed above, the assertion that the officers believed that handcuffs were necessary for officer safety is specious under the circumstances. Defendants knew that plaintiff did not have a weapon on his person because they had observed him changing from swim trunks to street clothes in the locker room. In addition, there were three officers accompanying plaintiff and plaintiff showed no signs of resisting or threatening the officers, or fleeing from the scene.

Defendants do not offer a genuine issue of material fact relating to plaintiff's consent which would preclude the court from granting summary judgment on this issue. Defendants argue in their papers that plaintiff's consent was voluntary for Fifth Amendment purposes, a conclusion with which the court agrees. *See supra.* What defendants do not address is the question whether plaintiff's consent was tainted under the *Brown* test due to the illegal arrest. The court, however, has examined the record and finds that there is *no* evidence which suggests that a reasonable jury could find that plaintiff's consent to search his locker, car and room was not constitutionally tainted by the illegal arrest. Therefore, the court finds that defendants violated plaintiffs' Fourth Amendment rights when they searched his locker, car and room on the basis of an invalid consent.[6] Accordingly, the court grants summary judgment on this issue.[7]

**6.** It is unclear to what extent each individual defendant was involved in each part of the illegal arrest and search. For example, it appears from the declaration of Defendant Woo that Defendant Acuna was not involved in the search of plaintiffs' home. Woo Dec. ¶ 17. The court does not have a declaration from Defendant Acuna himself. At any rate, this issue goes to the extent of damages of each defendant rather than to liability.

**7.** Although the parties have not addressed the issue, the court notes that, in asking plaintiff for consent to search after he had invoked his *Miranda* rights, defendants may also have violated plaintiff's Sixth Amendment right to counsel under *Massiah*. *Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964) (holding that use at trial of incriminating statements elicited from defendant in absence of his lawyer violated his Sixth Amendment rights). For example, in *United States ex. rel. Daley v. Yeager*, 415 F.2d 779 (3d Cir.1969), *cert. denied*, 397 U.S. 924, 90 S.Ct. 919, 25 L.Ed.2d 104 (1970), the court found that consent obtained from a defendant to search his apartment *after* he had invoked his *Miranda* rights violated his Sixth Amendment rights under *Massiah*. *Yeager*, 415 F.2d at 783. While that case arose in the context of a formal prosecution having already begun, the court cited extensively to language from *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), in which the Supreme Court held that even where no formal prosecution has begun, a defendant being interrogated has a Sixth Amendment right to counsel. *Yeager*, 415 F.2d at 784 (quoting *Escobedo*, 378 U.S. at 485–88, 84 S.Ct. at 1762–63).

The Eighth Circuit came to a similar conclusion in *Hall v. State of Iowa*, 705 F.2d 283, 290 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983). The court, citing *Yeager*, held that consent to search obtained after a defendant's right to counsel has attached *can* violate the Sixth Amendment right to counsel. In a footnote, the court said: "By requesting the

## IV. *Standing of Cayetano and Maria Patria Desales*

Plaintiffs maintain that the Fourth Amendment rights of Cayetano and Maria Patria Desales were violated because defendants searched their home without a warrant. It is undisputed that Cayetano and Maria Patria Desales are the sole owners of the home that was searched on 571 London Street, San Francisco, California. It is also undisputed that defendants did not have a search warrant when they entered the home. However, there is a dispute between the parties as to which parts of the house owned by Cayetano and Maria Patria Desales were searched. Defendants maintain that only the room of plaintiff Clysly Desales was searched, while plaintiffs allege that the entire bottom floor of the house (where Clysly Desales' bedroom was located) was searched.

Areas where a person has a reasonable expectation of privacy are protected by the Fourth Amendment from illegal searches and seizures. *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 510, 19 L.Ed.2d 576 (1967). Defendants contend that, because plaintiff's bedroom in his parents' house was solely for his own use, his parents did not have a reasonable expectation of privacy in regard to his room. They also claim that plaintiff was either an invitee or a lessee of his parents. Therefore, according to defendants, a cause of action by the Clysly Desales' parents may not stand because only Clysly Desales' room was searched.

Defendants cite to no evidence supporting this position. There is no evidence in the record that Clysly Desales either paid rent to his parents or had a separate lock on

or entrance to his bedroom, facts which might support defendants' position. However, plaintiffs bear the burden of establishing standing to assert Fourth Amendment claims. *See Rakas v. Illinois,* 439 U.S. 128, 130–31 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978). In their reply brief, plaintiffs do not address the standing issue, claiming only that, because the consent of Clysly Desales was invalid, defendants' standing argument is irrelevant. Even though the court has found that the consent of Clysly Desales was invalid, plaintiffs' argument may not be correct. Rather, it may be that, if Clysly was in fact a lessee of his parents' home and if the defendants did search only his room, then only Clysly himself has a cause of action for a section 1983 violation due to an illegal search.

While the evidence and the declarations the court currently has in its possession do not support the defendants' argument, the court finds itself without enough evidence to rule on this matter at this point. Therefore, the court grants the parties ten days from the date of this order to submit further evidence and declarations regarding the standing of Cayetano and Maria Patria Desales. Specifically, the court requests declarations regarding Clysly's status in his parents' home at the time of the incident (*e.g.,* whether or not he paid rent or kept a lock on his door) and any evidence supporting or refuting defendants' contention that only certain parts of the house were searched (*e.g.,* photographs taken, evidence of items moved).

## V. *Qualified Immunity* [8]

Defendants maintain that they have qualified immunity for their actions.

consent in violation of the agreement [not to question], the state deliberately and designedly attempted to elicit concessions from the suspect to obtain evidence in circumvention of protections a lawyer might provide." *Id.* at 290, n. 6. While such behavior was not a per se violation of the Sixth Amendment, the court found that, under certain circumstances, a request for consent would result in prejudice to the rights of a defendant. *Id.; see also United States v. Chavez,* 902 F.2d 259, 266 (4th Cir.1990); *Robinson v. Percy,* 738 F.2d 214, 220 (7th Cir.1984).

8. Although defendants raised the qualified immunity issue in their opposition papers and not on their own motion for summary judgment, it is

appropriate to rule on the issue at this point. The Ninth Circuit has found that summary judgment may be granted sua sponte to a nonmoving party if the moving party against whom summary judgment was granted "had a full and fair opportunity to ventilate the issue involved in the motions." *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 312 (9th Cir.1982) (citing *Fountain v. Filson,* 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949)). The court finds that such a standard applies in the instant case as well. The court may decide the issue of qualified immunity, a question of law which should be decided "at the earliest possible stage of litigation," *Hunter v. Bryant,* 502 U.S. 224, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589

Qualified immunity shields officers who reasonably but mistakenly conclude that their conduct is lawful. *Hunter v. Bryant,* 502 U.S. 224, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). It is "an immunity from suit rather than a mere defense to liability." *Hunter,* 502 U.S. at ——, 112 S.Ct. at 536 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)). Therefore, it is imperative to resolve immunity questions "at the earliest possible stage in litigation." *Hunter,* 502 U.S. at ——, 112 S.Ct. at 536. Immunity is generally a question of law for the court to decide. *Id.* "Where the underlying facts are undisputed, a district court must decide the issue on motion for summary judgment." *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993).[9]

■ In determining whether qualified immunity exists, the court must decide:

> whether, in light of clearly established principles governing the conduct in question, the officer objectively could have thought that his conduct was lawful. *See Anderson v. Creighton,* 483 U.S. 635, 641, [107 S.Ct. 3034, 3040, 97 L.Ed.2d 523]. This standard requires a two-part analysis: 1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?

*Act Up!/Portland,* 988 F.2d at 871.

■ The threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court. *Id.* In the instant case, the threshold conduct at issue is the actions of the officers in taking plaintiff into custody and holding him. Therefore, the question is whether the law establishing what behavior

by police officers constitutes an arrest was clearly determined on October 29, 1992, the time of the actions.

■ The court finds that, at the time defendants handcuffed plaintiff and took him into custody, it was clearly established in this circuit that such conduct constituted an arrest and not merely a *Terry*-type detention. *Robertson,* decided in 1987, held that a "*Terry* stop involves no more than a brief stop, interrogation and, under the proper circumstances, a brief check for weapons. Beyond such a brief and narrowly circumscribed intrusion, an arrest occurs, for which probable cause is required." *Robertson,* 833 F.2d at 780; *see also Dunaway,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (petitioner who was taken from a neighbor's home, driven to a police station and read his *Miranda* rights had been arrested).

Having found that the principles governing the conduct establishing arrest were firmly established, the court must now consider whether, in light of those principles, a reasonable officer in the defendants' position could have believed that his actions were legal. *Act–Up!/Portland,* 988 F.2d 868. The officers' subjective beliefs about the actions are irrelevant. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). "Rather, only an officer's '*objective* "good faith"—that is, whether he could reasonably have believed that [his conduct] did not violate the Fourth Amendment—may be relevant to the availability of the qualified immunity defense to monetary liability under § 1983.'" *Morgan,* 997 F.2d at 1260 (quoting *Graham v. Connor,* 490 U.S. 386, 399, 109 S.Ct. 1865, 1873, 104 L.Ed.2d 443 (1989) (emphasis in original)). If a reasonable officer in defendants' position could have believed that his behavior under *Robert-*

---

(1991), if the party against whom summary judgment is being granted has had a full opportunity to address the issue. *Cool Fuel, Inc.* 685 F.2d at 312.

The court finds that the defendants, who raised the issue in their opposition papers, had every opportunity to fully address the issue in that forum. The court assumes that they did so to the extent they found necessary. *See id.* Because the court finds no factual disputes which prevent it from deciding the qualified immunity issue, it will reach the issue in this order.

9. The court emphasizes that the facts in dispute (except for the extent of the search of the house, discussed *supra* ) are not material to this issue. As discussed above, there are slight disputes as to the time plaintiff was approached by the officers, and as to the amount of time plaintiff was handcuffed. At all times in this order, the court has construed the facts in the manner most favorable to defendants.

*son* did not constitute an arrest requiring probable cause, but rather a *Terry* stop requiring reasonable suspicion, then the defendant officers are entitled to qualified immunity.

 The court finds that, as a matter of law, an officer in the defendants' position could not have reasonably believed that the action did not constitute an arrest of plaintiff requiring probable cause. A *Terry* stop is a brief stop for questioning and possibly a weapons frisk. Under *Robertson*, it was not reasonable for officers to believe that their behavior, which advanced far beyond what is described as a *Terry* stop actually constituted a detention and not an arrest. As discussed above, there was not probable cause to validate the arrest. Because it was not reasonable for defendants to believe that their actions constituted a detention and not an arrest, their subsequent actions which they purported to justify as pursuant to a *Terry* stop, were also unreasonable.

Neither are defendants entitled to qualified immunity in regard to the search of plaintiff's locker, car and bedroom. As discussed above, reasonable officers in the defendants' position should have known that their behavior amounted to an illegal arrest. The court finds that the principles governing consent obtained after an illegal arrest were also firmly established at the time of the events in question here. *See, e.g., United States v. Delgadillo–Velasquez*, 856 F.2d at 1299. The court further finds that, under such clearly established law, no reasonable officer could have believed that the conduct involved here in obtaining the consent (*e.g.* the lack of intervening circumstances between the illegal arrest and the consent, the handcuffing of plaintiff) was lawful.

Therefore, the court holds that defendants are not entitled to qualified immunity for any constitutional violations addressed in this order.

*CONCLUSION*

For the foregoing reasons, plaintiff Clysly Desales' motion for summary judgment on the issue of defendant's liability for violation of his civil rights is GRANTED.

Plaintiffs Cayetano and Maria Patria Desales' motions for summary judgment on the issue of defendants' liability for an illegal search of their home is STAYED. The parties are given ten (10) days from the date of this order to submit further declarations addressing the issue of these plaintiffs' standing.

Defendants are not entitled to a defense of qualified immunity.

IT IS SO ORDERED.