Argued and submitted June 19, 1985, affirmed January 8, reconsideration denied March 28, petition for review denied April 29, 1986 (301 Or 77)

STATE OF OREGON,
*Respondent,*

*v.*

RUSSELL ERIK MATTILA,
*Appellant.*

(M 56583-B; CA A34261)

712 P2d 832

David Gernant, Portland, argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Salem, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his conviction following a jury trial for obstructing governmental or judicial administration. ORS 162.235.[1] He contends that the trial court erred in overruling his demurrer to the complaint, in denying his motions for judgment of acquittal, in denying his motion to suppress evidence and in instructing the jury. We affirm.

We summarize the evidence in the light most favorable to the state. Defendant and several other siblings were living at their parents' house in Washington County. No mortgage payments had been made on the house in two years. As a result, on October 18, 1982, the district court issued an order directing that the Mattilas vacate the house within thirty days or be evicted.

On December 6, 1982, a civil deputy sheriff arrived at the Mattilas' house accompanied by a uniformed deputy sheriff to serve eviction papers. When the Mattilas refused to open the door, the deputies spoke with them first through the closed door and then through the front window. After being requested a number of times by the deputies to leave the house, the Mattilas refused to do so.

Defendant stood at the front window holding some papers. He shouted to the deputies that his parents had "superior title" to the house. By that time other deputy sheriffs had arrived. At one point defendant turned toward the interior of the house and asked his mother, in a voice loud enough for several of the deputies to hear: "They're still on our property. Can we shoot them?" After about thirty minutes, a deputy approached the window and asked to see the papers. As defendant leaned out, the deputy maced him in the face. Other deputies then broke down the door, removed a crutch that was lodged between the door and the bottom inside stairway step to hold the door closed and entered the house.[2]

---

[1] ORS 162.235(1) provides:

"A person commits the crime of obstructing governmental or judicial administration if the person intentionally obstructs, impairs or hinders the administration of law or other governmental or judicial function by means of intimidation, force, physical or economic interference or obstacle."

[2] Apparently, the door lock was broken and the crutch had been there for several days to keep the door closed. A family member was always inside the house to remove the crutch to allow others to enter.

Sgt. Lewis testified that, as he entered the house, he saw defendant running past him down the hallway toward a bedroom. He grabbed him by the hair and put him down on the floor. He did not realize, until informed later by Deputy Matthews, that defendant had been maced. Deputy Stratford testified that he saw defendant on the floor, but not as the result of having been maced: "He had help getting to the floor—from Sgt. Lewis." A search of defendant's bedroom revealed a loaded military-type M1 carbine with a 30-round magazine on the bed. It apparently belonged to defendant's brother. It was not seized or checked for fingerprints by the deputies.

■    · Defendant first contends that the trial court erred in denying his "Demurrer; Motion to Dismiss," which was based on the ground that ORS 162.235 is unconstitutional under Article I, sections 8, 10, 11, 20 and 21, of the Oregon Constitution and the 1st and 14th Amendments to the United States Constitution.[3]

We conclude that ORS 162.235 satisfies the requirements of the Oregon Constitution. *See State v. Moyle,* 299 Or 691, 705 P2d 740 (1985); *State v. Garcias,* 296 Or 689, 679 P2d 1354 (1984); *State v. Flores,* 296 Or 500, 677 P2d 698 (1984); *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982); *State v. Blocker,* 291 Or 255, 630 P2d 824 (1981); *State v. Spencer,* 289 Or 225, 611 P2d 1147 (1980); *State v. Wood,* 67 Or App 218, 678 P2d 1238, *rev den* 297 Or 124 (1984). Defendant gives us no reason to believe that the result would be any different under the United States Constitution. We find no merit to defendant's constitutional arguments.

■    Defendant next contends that the evidence does not show that he "physically interfered" with the deputies. Because he did not hit, spit at, shove, push or otherwise physically contact any deputy, the only possible physical interference shown by the evidence was the crutch holding the door closed. He argues further that there is no evidence connecting him with the crutch, or even that it was placed there to keep the deputies out of the house, thus, arguably, obstructing the administration of law.

---

[3] Defendant's brother also was convicted of obstructing governmental administration arising out of the same episode. His conviction was affirmed without opinion. *State v. Mattila,* 71 Or App 577, 693 P2d 62 (1984).

The only door into the house was blocked shut by the crutch. Defendant refused to remove it. At trial, he testified that his mother did not wish the deputies to enter and that he knew that the crutch was holding the door closed. Throughout the incident, he stood in the window shouting at the deputies, waving papers at them and warning them to keep away from the house. When requested by a deputy to put on his clothes and come outside, he stood in the window and took off his pants. No reason appears why he could not have removed the crutch, thereby permitting deputies to enter the house.

At trial, defendant admitted that he had no intention of allowing the deputies to enter. Whether evidence of his behavior in keeping the door wedged shut was sufficient within the meaning of the statute was a question for the jury. See *Jackson v. Virginia,* 443 US 307, 99 S Ct 2781, 61 L Ed 2d 560 (1979); *State v. Harris,* 288 Or 703, 609 P2d 798 (1980); *State v. Krummacher,* 269 Or 125, 523 P2d 1009 (1974). We find no error.

■ Defendant argues that there was insufficient evidence to submit the case to the jury on the theory of intimidation. He argues further that his conduct could not in fact have intimidated the deputies. We disagree. Taking the evidence in the light most favorable to the state, it shows that defendant made an implied threat when he said to his mother, "They're still on our property. Can we shoot them?" That was heard by several deputies, and it supports a finding that he intended thereby to obstruct the deputies in the performance of their duties.

Matthews testified that he maced defendant out of concern that defendant would "do something to us while we were attempting to enter the house." Defendant testified that one officer emerged from his car drawing his revolver and carrying a shotgun in his other hand. About that time, Lewis subdued defendant as he ran down the hallway toward his bedroom, where the carbine with the 30-round magazine was found in the bedroom.

In a volatile situation such as that, reasonable police officers facing angry subjects moving within a house and not always visible to them could well be placed in fear by the totality of defendant's conduct, including his implied threat to shoot them. The jury was instructed that "intimidation"

means "intentionally placing another in fear by threats to commit a crime." To the extent that its verdict rested on the state's intimidation theory, the jury necessarily found, as a matter of fact, that the deputies were placed in fear. That determination is supported by the evidence. We find no error.

■ Defendant also argues that, when the deputies were denied entry to the house, their only remedy was to return to district court and seek a contempt warrant against the Mattilas. We disagree. The deputies certainly could have done that, but they were not required to do so. *See* Commentary to Proposed Oregon Criminal Code § 162.235 (1975); *see also People v. Offen,* 96 Misc 2d 147, 408 NYS 2d 914 (1978).

Defendant contends that the trial court erred in instructing the jury that it could find him guilty of obstructing the administration of law by means of *either* physical interference *or* intimidation. We disagree. The instruction is in the language of the statute. ORS 166.235. We find no error.

■ Defendant contends that the trial court abused its discretion in denying the motion to suppress evidence of the carbine found in his bedroom. He argues that, in order to admit the evidence, the state had to show that the carbine was loaded, that it was found in his bedroom and that he was moving toward his bedroom at the time he was arrested. He argues further that the evidence adds nothing probative to the state's proof of intimidation, because the deputies did not even know about the carbine until after he and other family members had been arrested and the house secured. Moreover, he points out that it was so unimportant that they did not . seize it, or even dust it for prints, and claims that it was highly prejudicial evidence.

Three factors must be considered in determining whether the probative value of evidence is outweighed by its prejudicial impact: the need for the evidence; its persuasiveness; and its inflammatory effect on the jury. *State v. Hickam,* 71 Or App 471, 479, 692 P2d 672 (1984). There is evidence from which a reasonable jury could conclude that defendant intended to shoot the deputies and that he was going to his bedroom to get the carbine to do just that. The evidence is relevant to the issue of defendant's intent to intimidate them. It is the only *physical* evidence that the state has of defendant's intent to shoot the deputies. Therefore, the

need for the evidence was substantial. The trial court limited the jury's consideration of the evidence to the fact that a weapon existed. It did not permit the state to describe the type of weapon, intending thereby to avoid any prejudicial conclusions that the jury might draw from the fact that it was a loaded military-type carbine with a 30-round magazine. Lewis testified only that he found a loaded weapon on the bed. Defendant ran past the kitchen where he could have washed the mace from his eyes. The jury was not required to believe his testimony that he was running to the bathroom to wash his eyes. We conclude that the trial court did not abuse its discretion in admitting the evidence.

■      Defendant contends that the trial court erred in instructing the jury that "intimidation" means "intentionally placing another in fear by threats to commit a crime." He argues that the word "intimidation" is unconstitutionally vague, that the court tried to overcome the statute's vagueness by giving the narrowing definition, that there was no showing that that definition was derived from a statute or legislative history and that a court may only limit the scope of a statute with reference to legislative standards. *See State v. Robertson, supra,* 293 Or at 411.

The constitutional issue has been addressed above. The commentary to ORS 162.235 provides, in relevant part:

"[The statute] requires that the prohibited conduct be manifested by threats, violence or physical interference, a limitation that recognized certain constitutional safeguards * * *.

"* * * The section is limited, therefore, to obstructive threats or violent or physical interference. The use of intimidation is not specifically proscribed unless it creates an unlawful obstruction of governmental process."

The trial court did not err in instructing the jury.

Affirmed.