**Paul N. CLAVETTE, Plaintiff,**

v.

**Lonn C. SWEENEY, Jason K. Francis, P. Scott Vaughn, and James P. Morgan, Defendants.**

**No. CV 99–884–BR.**

United States District Court, D. Oregon.

Jan. 30, 2001.

Harrison Latto, Portland, OR, for Plaintiff.

Jeffrey L. Rogers, City Attorney, J. Scott Moede, Deputy City Attorney, Portland, OR, for Defendants.

## OPINION AND ORDER

BROWN, District Judge.

This action comes before the Court on Defendants' Motion for Summary Judgment (# 26) and Defendants' Supplemental Motion for Summary Judgment Regarding James P. Morgan (# 44). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment and **GRANTS** Defendants' Supplemental Motion for Summary Judgment.

### FACTUAL BACKGROUND

The following facts are undisputed except when otherwise noted. At 1:00 a.m. on August 29, 1998, the Portland Bureau of Emergency Communications (BOEC) received a 9-1-1 call reporting a house fire. The caller, who lived on Southeast 84th Place, said she thought she could see flames through the window of a house located on Southeast 85th Avenue. BOEC quickly dispatched police and fire equipment. The first person on the scene was Portland Police Officer Eric Torgerson, who observed thick smoke that initially appeared to come from a window of Plaintiff's house on Southeast 85th Avenue. Officer Torgerson went into Plaintiff's backyard and discovered a 55-gallon drum. Defendants claim smoke and flames were billowing from the drum; Plaintiff denies that allegation and asserts the drum only was "smoldering." Officer Torgerson told BOEC there was "trash burning inside a 55-gallon drum" and gave similar information to the crew of Fire Engine 11, who

had just arrived. Officer Torgerson then left the scene.

Fire Lieutenant Thomas Miller, who was wearing a firefighter's uniform, knocked or tapped on the front door of Plaintiff's house. Plaintiff's wife, Claudia Clavette, awoke, saw a firefighter on her porch, and told Plaintiff there was a "fire guy on the porch." She took a pistol out of her dresser drawer and went to the front door. Lieutenant Miller told Ms. Clavette there was a "barrel burning in the back yard," and asked her to "put some clothes on and meet me in the back yard." He was not aware Ms. Clavette was holding a pistol. Ms. Clavette told Lieutenant Miller she would not go into the backyard. Plaintiff went out the side door of the house and confronted the firefighters. Plaintiff told the firefighters, "You're lucky my wife didn't shoot you guys. She thought you were prowlers." He also said, "I would appreciate it if you guys would get off of my property. Haven't you got better things to do with our tax dollars?" Plaintiff again told the firefighters to leave his property. The firefighters gestured to the 55–gallon drum and said, "[T]his is a burn barrel." Plaintiff said the drum was a barbecue and told the firefighters to "[g]et the fuck off my property now." Lieutenant Miller called for Code 3 cover and requested police assistance. The parties agree "Code 3 cover is the highest level of request, indicating a response with lights and siren as a need for urgent assistance."

Defendants Sweeney, Francis, and Vaughn responded to the Code 3 request. According to BOEC records, Officer Vaughn arrived at 1:12:39 a.m., Officer Francis arrived at 1:12:50 a.m., and Sergeant Sweeney arrived at 1:13:50 a.m. Lieutenant Miller told Sergeant Sweeney that Plaintiff "came out and yells, screaming at us, saying something about getting shot and get off the property. And he's got a fire in the back yard and won't let us on to put it out and ran us out of there." At some point, Reserve Officer Morgan also arrived on the scene.

The parties disagree about what happened next. Defendants assert Plaintiff refused to identify himself and told Officers Francis and Vaughn they had no right to come onto his property. Defendants also assert Plaintiff prevented the firefighters from going onto his property to put out the fire. Sergeant Sweeney allegedly told Plaintiff he would be taken into custody unless he let the firefighters onto his property. After Sweeney told Plaintiff he would count to three and give Plaintiff one more chance to cooperate, Plaintiff allegedly assumed a bladed or fighting stance. As Sergeant Sweeney reached for Plaintiff's arm, Plaintiff jerked back and resisted being taken into custody. Officers Vaughn, Francis, and Morgan then helped Sweeney take Plaintiff down to the sidewalk and placed him in handcuffs.

Plaintiff's version of events is significantly different. Plaintiff asserts any fire on his property was extinguished by the time he left his house and went into the backyard. He denies firefighters needed to do anything about a fire and denies he prevented them from coming onto his property. Plaintiff also denies Sergeant Sweeney told him he would be taken into custody if he did not allow firefighters onto his property. According to Plaintiff, the officers never asked his name, but only asked him to produce proof of his identity. Plaintiff responded he did not have any identification with him because he had just gotten out of bed and was wearing only a pair of pants. Plaintiff also denies going into a bladed stance or resisting arrest before he was taken into custody.

The parties agree Defendants Sweeney, Francis, and Vaughn did not punch, kick, strike, draw, or point their handguns, mace, or use a baton when gaining control over Plaintiff. Plaintiff, however, asserts Reserve Officer Morgan punched him and struck him with a baton. Defendants deny that allegation. The parties agree Plaintiff was picked up off the ground after he was handcuffed and was placed in Officer Vaughn's patrol car. Plaintiff then identi-

fied himself and told Sergeant Sweeney he was on probation for a federal felony conviction for knowingly taking a threatened species. Sergeant Sweeney testified he decided not to charge Plaintiff with a crime because the fire was out and the police had obtained the information they needed to complete paperwork for a referral to the Department of Environmental Quality (DEQ) for an illegal burn. Plaintiff was not formally arrested or charged with any crime. The parties disagree about the length of time Plaintiff was detained in the police car before being released. Defendants assert Plaintiff spent less than 30 minutes in the car; Plaintiff claims he was there for about an hour.

## THE AMENDED COMPLAINT

Plaintiff filed his original Complaint on June 22, 1999, and named Sweeney, Francis, and Vaughn as Defendants. Plaintiff filed an Amended Complaint on October 17, 2000, in which he added Morgan as a Defendant. In the Amended Complaint, Plaintiff alleges Defendants violated his Fourth Amendment rights by arresting him without a warrant and without probable cause, by detaining him for an unreasonable period, and by using unreasonable and excessive force in arresting or detaining him. Plaintiff pursues these claims under 42 U.S.C. § 1983 and seeks damages for medical expenses, lost income, emotional distress and humiliation, and costs and attorneys' fees.

Defendants deny they violated Plaintiff's constitutional rights and allege several affirmative defenses, including qualified immunity, "community caretaking," "exigent or emergent circumstances," self-defense, and comparative fault. Defendants also contend Plaintiff's claims against Officer Morgan are barred by the applicable statute of limitations.

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants filed their first Motion for Summary Judgment before Plaintiff filed his Amended Complaint. In that Motion, Defendants argue they are entitled to summary judgment on several issues. First, Defendants contend Plaintiff cannot prevail on his claim for excessive detention because "the scope of the detention was limited to allowing the firefighters to extinguish the fire, and obtain Mr. Clavette's name to complete paperwork for the DEQ referral for an illegal burn and the length of the detention was a maximum of 20–25 minutes, reasonable on its face given the circumstances."

Second, Defendants contend they are entitled to judgment on Plaintiff's claim for false arrest because Defendants had probable cause to arrest Plaintiff for several crimes. Third, Defendants argue they are entitled to qualified immunity on Plaintiff's claims for false arrest and excessive detention because a reasonable police officer could have believed the detention and any arrest were lawful. Fourth, Defendants argue they did not use excessive force against Plaintiff.

After Plaintiff filed his Amended Complaint adding Reserve Officer Morgan as a Defendant, Defendants filed a Supplemental Motion for Summary Judgment in which they argue Plaintiff's claims against Morgan are time-barred. Defendants also argue Morgan is entitled to summary judgment for the reasons set forth in Defendants' original Motion for Summary Judgment.

## ANALYSIS

### I. Summary Judgment Standard

Under Fed.R.Civ.P. 56:

Summary judgment should be granted if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. A scintilla of evidence or evidence that is merely colorable or

not significantly probative does not present a genuine issue of material fact. The underlying substantive law governing the claims determines whether or not it is material. Reasonable doubts as to the existence of material factual issue[s] are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party. There must be enough doubt for a "reasonable trier of fact" to find for plaintiffs in order to defeat the summary judgment motion.

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000) (citations omitted).

## II. Defendants Are Entitled to Summary Judgment on Plaintiff's Claim for False Arrest

Defendants argue they did not arrest Plaintiff, but merely detained him. Defendants also contend any arrest that may have occurred was justified by probable cause.

### A. Evidence in the Record Supports Plaintiff's Contention He was Arrested and Not Merely Detained

 Police seizures of individuals generally fall into one of two categories. First, a police officer may conduct a brief stop for investigatory purposes when the officer has only "reasonable suspicion" to believe the stopped individual has committed wrongdoing. *See Terry v. Ohio*, 392 U.S. 1, 23–27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See also Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir.1995); *Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir.1993), *cert. dismissed*, 510 U.S. 1033, 114 S.Ct. 671, 126 L.Ed.2d 640 (1994). Second, a police officer may arrest an individual when the officer has probable cause to believe the individual has committed a crime. *Allen*, 73 F.3d at 235.

The Ninth Circuit has explained "[t]here is no bright-line rule to determine when an investigatory stop becomes an arrest." *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir.1996).

Rather, in determining whether stops have turned into arrests, courts consider the "totality of the circumstances." As might be expected, the ultimate decision in such cases is fact-specific.

In looking at the totality of the circumstances, we consider both the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted and the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken. In short, we decide whether the police action constitutes a *Terry* stop or an ·arrest by evaluating not only how intrusive the stop was, but also whether the methods used were reasonable *given the specific circumstances*. As a result, we have held that while certain police actions constitute an arrest in certain circumstances, e.g., where the "suspects" are cooperative, those *same* actions may *not* constitute an arrest where the suspect is uncooperative or the police have specific reasons to believe that a serious threat to the safety of the officers exists. "The relevant inquiry is always one of reasonableness under the circumstances."

*Id.* (citations omitted; emphasis in original). *See also Halvorsen v. Baird*, 146 F.3d 680, 684 (9th Cir.1998).

 To determine whether a detention constituted an arrest or merely an investigatory stop, the court may consider whether a reasonable innocent person would have felt free to leave after brief questioning. *Allen*, 73 F.3d at 235. Police ordinarily may not use handcuffs or otherwise restrain a person unless they have probable cause to arrest the individual. *Washington*, 98 F.3d at 1187. "In fact, even markedly less intrusive police action has been held to constitute an arrest when the inherent danger of the situation does not justify the intrusive police action." *Id.* Certain circumstances, however, may justify the restraint or lengthy detention of a

person for whom there is not probable cause to arrest. Such action may be appropriate when the police diligently pursue an investigation that is likely to confirm or to dispel their suspicions of the individual quickly. *Halvorsen,* 146 F.3d at 684. Police officers also may use intrusive means of effecting a stop when the suspect is uncooperative, the stop closely follows a violent crime, or the officers have information that the suspect is armed. *See Washington,* 98 F.3d at 1189. "Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations." *Allen v. City of Los Angeles,* 66 F.3d 1052, 1056 (9th Cir.1995). Consequently, a stop is not automatically converted into an arrest when officers point their weapons at a suspect, use handcuffs, and place the suspect in a police car for questioning. *Id.* The relevant inquiry is one of reasonableness under the circumstances. *Id.* at 1057.

■ Here, Defendants argue Plaintiff's detention was justified as a *Terry* stop, and was not an arrest, because Plaintiff would not allow firefighters onto his property to extinguish a fire, refused to identify himself, and went into a fighting stance when officers asked him to cooperate. Plaintiff denies there was a fire that needed to be put out, denies he assumed a fighting stance or otherwise resisted being taken into custody, and denies Defendants asked him to identify himself before they detained him. Plaintiff concedes he ordered firefighters to leave his property and said they were lucky his wife had not shot them because she thought they were prowlers. The evidence, however, construed in the light most favorable to Plaintiff, does not compel an inference Plaintiff presented a threat to Defendants or to the firefighters at the time Defendants took Plaintiff into custody. The Court, therefore, concludes the forcefulness of Plaintiff's detention was lawful only if the officers had probable cause to arrest him.

### B. Defendants Had Probable Cause to Arrest Plaintiff

■ Defendants contend they had probable cause to arrest Plaintiff. The Court agrees. Although Plaintiff contends no fire was burning by the time he emerged from his house, he admits Lieutenant Miller told Sergeant Sweeney that Plaintiff "came out and yell[ed], screaming at us, saying something about getting shot and get off the property. And he's got a fire in the back yard and won't let us on to put it out and ran us out of there." Defendants were entitled to rely on Lieutenant Miller's report, which, standing alone, gave Defendants probable cause to believe Plaintiff had violated Or.Rev.Stat. § 162.235 [1] by hindering the governmental function of firefighting by means of intimidating and threatening the firefighters. *See State v. Mattila,* 77 Or.App. 219, 225, 712 P.2d 832 (to violate statute, prohibited conduct must be manifested by threats, violence, or physical interference), *rev. denied,* 301 Or. 77, 717 P.2d 632 (1986). Defendants are entitled to summary judgment against Plaintiff's claim that Defendants violated his Fourth Amendment rights by arresting him without probable cause.

At oral argument, Plaintiff asserted an Oregon police officer may not arrest an individual on a misdemeanor charge unless a warrant exists for the individual's arrest or the officer personally witnessed the individual commit the misdemeanor crime. Plaintiff contends, therefore, Defendants

---

1. Or.Rev.Stat. § 162.235 states:

(1) A person commits the crime of obstructing governmental or judicial administration if the person intentionally obstructs, impairs or hinders the administration of law or other governmental or judicial function by means of intimidation, force, physical or economic interference or obstacle.

(2) This section shall not apply to the obstruction of unlawful governmental or judicial action or interference with the making of an arrest.

(3) Obstructing governmental or judicial administration is a Class A misdemeanor.

violated his Fourth Amendment rights when they arrested him because they lacked authority to effect the arrest under Oregon law. Plaintiff offered no authority to support his argument. To the contrary, Oregon law in effect at the time of Plaintiff's arrest provided explicitly that a police officer could arrest a person without a warrant if the officer had probable cause to believe the person committed a felony, a Class A misdemeanor, or certain other specified crimes. Or.Rev.Stat. § 133.310(1) (1997). The requirement that the officer must have been present when the crime was committed applied only to lesser crimes.[2] In this case, Defendants had probable cause to arrest Plaintiff for violating Or.Rev.Stat. § 162.235, a Class A misdemeanor, and, therefore, were entitled to arrest him without a warrant.

### III. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Claim for Excessive Force

█ The Ninth Circuit recently summarized the law regarding excessive force claims as follows:

The Fourth Amendment prohibition against unreasonable seizures permits law enforcement officers to use only such force to effect an arrest as is "objectively reasonable" under the circumstances. As we have repeatedly said, whether the force used to effect an arrest is reasonable "is ordinarily a question of fact for the jury." Although excessive force cases can be decided as a matter of law, they rarely are because the Fourth Amendment test for reasonableness is inherently fact-specific. It is a test that escapes "mechanical application" and "requires careful attention to the facts and circumstances of each particular case," and thus naturally favors jury resolution.

According to *Graham* [*v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ], "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a *careful balancing of 'the nature and quality of the intrusion* on the individual's Fourth Amendment interests' *against the countervailing governmental interests at stake.*" Assessing "the nature and quality" of a given "intrusion" requires the fact finder to evaluate "the type and amount of force inflicted." Weighing the governmental interests involved requires the fact finder to evaluate such factors as "(1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others, ... (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight," and any other "exigent circumstances [that] existed at the time of the arrest." As we have previously explained, "the essence of the *Graham* objective reasonableness analysis" is that " '[t]he *force* which was applied must be balanced against the *need* for that force: it is *the need for force* which is at the *heart* of the *Graham* factors.' " Thus, where there is no need for force, *any* force used is constitutionally unreasonable.

*Headwaters Forest Defense v. County of Humboldt,* 211 F.3d 1121, 1133 (9th Cir. 2000) (citations omitted; emphasis and brackets added by *Headwaters* court). If evidence suggests officers could have used other tactics to effect an arrest, the reasonableness of the force they used is a question for the jury. *Id.* at 1139.

Two recent Ninth Circuit cases illustrate the difficulty defendants face in arguing for summary judgment against claims of excessive force. In *LaLonde v. County of Riverside,* 204 F.3d 947 (9th Cir.2000), the plaintiff alleged a police officer who arrest-

2. In 1999, the Oregon legislature amended Or.Rev.Stat. § 133.310 to permit police officers to effect warrantless arrests whenever they have probable cause to believe a person

has committed any felony or misdemeanor crime. *See* Or.Rev.Stat. § 133.310 (1999); 1999 Or. Laws. ch. 1040 § 8.

ed him used excessive force by placing his knee on the plaintiff's back while handcuffing him. The Ninth Circuit held that a jury could conclude the arresting officer used excessive force in applying handcuffs even though the plaintiff admitted he initially resisted arrest, if the plaintiff's injuries were sufficiently serious. *Id.* at 959. Consequently, the district court erred by granting the defending officer qualified immunity before trial.

The Ninth Circuit reached a similar result in *Katz v. United States,* 194 F.3d 962 (9th Cir.1999), *cert. granted,* —— U.S. ——, 121 S.Ct. 480, 148 L.Ed.2d 454 (2000). Plaintiff Katz was arrested when he held up a banner during a protest at a military installation. Katz claimed the arresting officers grabbed him from behind, picked him up, walked or dragged him to a van, and shoved him into the vehicle. *Id.* at 965–66. Katz denied the officers' claims that he resisted arrest. He was detained for about 20 minutes and was released without being charged with any crime or other violation. *Id.* at 966, 970. The Ninth Circuit rejected the officers' argument that the amount of force they used was reasonable as a matter of law. *Id.* at 970. In affirming the district court's denial of a defense motion for summary judgment, the Ninth Circuit held no reasonable officer could have found the force used to be necessary under the circumstances described by the plaintiff. In so holding, the court took into account Katz's age (60), the fact he was wearing a leg brace and allegedly did not appear armed or dangerous, and the minor nature of the crime he had committed. *Id.*

In this case, the parties dispute the nature of the force used against Plaintiff. Plaintiff claims all Defendants used excessive force when they took him to the ground and handcuffed him. Plaintiff also claims Defendant Morgan hit him with a baton, which Defendants deny. Defendants contend the force they did use was reasonable under the circumstances.

Viewing the evidence in the light most favorable to Plaintiff, the Court cannot determine conclusively that Defendants acted reasonably. That is a question for the jury. Under these circumstances, Defendants are not entitled to summary judgment against Plaintiff's claim that they used excessive force.

## IV. Defendants Are Not Entitled to Summary Judgment on Their Qualified Immunity Defense Against Plaintiff's Excessive Force Claim

■ The qualified immunity defense shields government actors from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Headwaters Forest Defense,* 211 F.3d at 1140 (citations omitted).

> The determination whether an official is entitled to qualified immunity involves a two-step analysis: "1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?"

*Id.* at 1140–41 (citation omitted). The law regarding the use of excessive force was clearly established at the time of the events at issue. *See id.* at 1141. Consequently, the only question is whether reasonable law enforcement officers in Defendants' position could have believed the force used was reasonable under the circumstances.

The Ninth Circuit repeatedly has held this reasonableness inquiry, in the context of qualified immunity, is the same as the reasonableness inquiry that determines the merits of the underlying excessive force claim. *See id.* Accordingly, if disputed facts prevent the court from deciding as a matter of law whether excessive force was used, the court also cannot decide as a matter of law whether officials are entitled to qualified immunity for the use of that force. *See id.* at 1141–42. *See also Katz,* 194 F.3d at 968–69.

As explained above, genuine disputes of material fact preclude summary judgment in Defendants' favor on Plaintiff's claim that Defendants used excessive force against him. Defendants, therefore, are not entitled to summary judgment on their qualified immunity defense against that claim.

## V. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Claim for Excessive Detention

■ Plaintiff claims Defendants detained him in a patrol car for about an hour and argues the detention was excessive and violated the Fourth Amendment's proscription against unreasonable seizures. This Court has determined Defendants had probable cause to arrest Plaintiff for violating Or.Rev.Stat. § 162.235. That conclusion, however, does not defeat Plaintiff's excessive detention claim as a matter of law. Although Defendants had probable cause to arrest Plaintiff, they did not charge him with any crime. A rational factfinder could infer from the absence of criminal charges and Sergeant Sweeney's testimony that he made a conscious decision not to charge Plaintiff with a crime, that Defendants detained Plaintiff even though they knew they were not going to charge him or take him to jail. Once the officers made a final determination they were not going to arrest Plaintiff formally, their continued detention of Plaintiff would be lawful only if some independent need for that detention existed; for example, if Plaintiff refused to identify himself so the officers could cite him for a DEQ violation, presented a threat to the officers, or interfered with the firefighters' duties.

Viewed in the light most favorable to Plaintiff, the evidence does not establish conclusively that Defendants acted reasonably if they continued to detain Plaintiff after they decided not to arrest him. Plaintiff insists he did not refuse to identify himself to the police and asserts he never threatened them or resisted arrest. Plaintiff also claims there was no fire on his property that needed attention. Finally, Plaintiff contends he was detained for approximately one hour. Accepting Plaintiff's version of events, the Court cannot conclude as a matter of law that the duration of Defendants' detention of Plaintiff was reasonable under the circumstances; therefore, Defendant's Motion for Summary Judgment as to the excessive detention claim is denied.

■ Defendants also argue they are entitled to qualified immunity against Plaintiff's excessive detention claim because a reasonable police officer could have believed the detention to be lawful. As explained above, however, disputed issues of fact preclude a conclusion the detention was reasonable as a matter of law. Those same disputed facts prevent the Court from concluding a reasonable officer could have believed the detention was lawful. *See Mena v. City of Simi Valley*, 226 F.3d 1031, 1040–41 (9th Cir.2000); *Liston v. County of Riverside*, 120 F.3d 965, 978–79 (9th Cir.1997).

## VI. Defendants Are Entitled to Summary Judgment on the Ground Plaintiff's Claim Against Defendant Morgan is Time-barred

Federal law does not specify a limitations period for actions brought under 42 U.S.C. § 1983. Instead, federal courts apply the forum state's statute of limitations for personal injury actions. *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir.1999), *cert. denied*, 529 U.S. 1117, 120 S.Ct. 1979, 146 L.Ed.2d 808 (2000). In Oregon, the limitations period for personal injury actions is two years. Or.Rev.Stat. § 12.110(1). *See also Plumeau v. School Dist. # 40*, 130 F.3d 432, 438 (9th Cir.1997).

Defendants argue Plaintiff's claim against Defendant Morgan is time-barred because Plaintiff did not name Morgan as a Defendant until he filed his Amended Complaint on October 17, 2000, which was more than two years after the August 29, 1998, incident at Plaintiff's home. Plaintiff argues his claim against Morgan is timely

either under the "discovery rule" or because the claim relates back to the date on which Plaintiff filed his original Complaint, which was June 22, 1999.

### A. Plaintiff's Claim Against Morgan Accrued More than Two Years Before Plaintiff Named Defendant Morgan in His Amended Complaint

 Federal law determines when a Section 1983 claim accrues. *Fink,* 192 F.3d at 914. The discovery rule provides a "claim accrues when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." *Id.* "The 'cause' is known when the immediate physical cause of the injury is discovered." *Dyniewicz v. United States,* 742 F.2d 484, 486 (9th Cir.1984). The Ninth Circuit has stated repeatedly the plaintiff need not also know the identity of the person who caused the injury. *See id.* at 486–87. *See also Gibson v. United States,* 781 F.2d 1334, 1344 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). Thus, the statute of limitations begins to run as soon as the plaintiff knows he or she has been injured and knows the physical cause of that injury.

In a recent Ninth Circuit case, the court appeared to retreat from the holdings of *Dyniewicz* and *Gibson* when it stated the statute of limitations "only begins to run once a plaintiff has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and *who has inflicted the injury.'* " *Bibeau v. Pacific Northwest Research Foundation Inc.,* 188 F.3d 1105, 1108 (9th Cir.1999) (quoting *United States v. Kubrick,* 444 U.S. 111, 122, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)) (emphasis added). The emphasized portion of the quotation, however, is dictum. The *Bibeau* plaintiff was a former inmate upon whom radiation experiments were performed in the 1960's. The case did not involve the timing of the plaintiff's identification of particular defendants but focused on when the plaintiff should have realized he had been injured by the experiments.

In *Kubrick,* the Supreme Court held an action under the Federal Tort Claims Act accrued when the plaintiff became aware he had been injured by treatment at a veteran's hospital even though the plaintiff had not been told the treatment was improper. *See* 444 U.S. at 118, 100 S.Ct. 352. Like *Bibeau, Kubrick* did not involve the timing of the plaintiff's identification of particular defendants. The portion of *Kubrick* quoted in *Bibeau* pertains to the Supreme Court's rejection of the plaintiff's argument that his claim did not accrue until he was explicitly told his medical treatment was improper. In that discussion, the Court distinguished the *Kubrick* plaintiff from others who do not and cannot know they have been injured: "The situation is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury." *Id.* at 122, 100 S.Ct. 352. This somewhat casual statement is the source of the *Bibeau* dictum that states a cause of action does not accrue until the plaintiff knows "who has inflicted the injury."

In *Gibson,* a case in which the plaintiff's lack of knowledge of the tortfeasor was squarely at issue, the Ninth Circuit rejected the argument that the *Kubrick* Court held a statute of limitations does not begin to run until the identity of the tortfeasor is (or should be) known. In *Gibson,* the plaintiffs sued FBI agents, the United States, and others for allegedly violating plaintiffs' civil rights by, *inter alia,* burning down the plaintiffs' garage. The Ninth Circuit held plaintiffs' claim accrued when they knew of the injury and its cause; *i.e.,* the destruction of their property and the fire. *Gibson,* 781 F.2d at 1344. Accrual of the claim was *not* delayed until the plaintiffs discovered who had burned their garage or became aware the federal government potentially was liable. *Id.* The Ninth Circuit rejected the plaintiffs' reliance on the *Kubrick* dictum:

Language in *Kubrick,* emphasizing the strategic importance to the litigant of knowing whom to sue, supports plaintiffs' proposed construction. *See* 444 U.S. at 122, 100 S.Ct. at 359 ("the prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury"). However, binding circuit precedent forecloses us from considering such an extension of *Kubrick.* In *Dyniewicz v. United States,* 742 F.2d 484 (9th Cir.1984), decedents' children discovered more than two years after a flash flood swept their parents' car off the road that national park rangers may have been responsible for the negligent road supervision that led to their parents' death. This court upheld the district judge's dismissal of the children's subsequent FTCA action on the ground that the administrative claim required for judicial relief was not timely filed. Distinguishing between the cause of injury and the party responsible for inflicting it, the court held that "[t]he 'cause' is known when the immediate physical cause of the injury is discovered." *Id.* at 486. The court reasoned that once plaintiffs knew "both the fact of injury and its immediate physical cause.... [their] cause of action accrued.... Their ignorance of the involvement of United States employees is irrelevant." *Id.* at 487. Likewise, in *Davis v. United States,* 642 F.2d 328 (9th Cir.1981), this court ruled that "[i]n the absence of fraudulent concealment it is plaintiff's burden, within the statutory period, to determine whether and whom to sue." *Id.* at 331. *These precedents compel our holding that plaintiffs' federal tort claim accrued in 1974, when they learned of the property destruction caused by the fire.*

*Gibson,* 781 F.2d at 1344 (citations omitted; emphasis added). Thus, under *Dyniewicz* and *Gibson,* a cause of action accrues when the plaintiff knows of the injury and its physical cause even if the plaintiff does not know who inflicted the harm.

 In this case, Plaintiff concedes he was aware of his alleged injuries when they occurred on August 29, 1998, and also knew Portland police officers allegedly inflicted the injuries. Accordingly, Plaintiff's claims against Reserve Officer Morgan accrued on August 29, 1998. It is irrelevant that Plaintiff did not also know Morgan's identity until a later point in time. *See Dyniewicz,* 742 F.2d at 487.

## B. Plaintiff's Claim Against Morgan Does Not Relate Back to the Date of Plaintiff's Original Complaint

 The law of the forum state determines whether an amended complaint in a section 1983 action relates back to the filing of the original complaint. *See Ortiz v. City of Imperial,* 884 F.2d 1312, 1314 (9th Cir.1989). *See also Lund v. City of Gresham,* 2000 WL 1364244, *2 (D.Or. 2000). In Oregon, the pertinent rule is Or. R. Civ. P. 23, subd. C, which provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, such party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining any defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party brought in by amendment.

In this case, Plaintiff's claim against Morgan arises out of the same occurrence set forth in the original Complaint. Morgan

**876**

was given notice that Plaintiff intended to sue him on April 6, 2000, well within the two-year limitations period; consequently, the only issue is whether, within the limitations period, Morgan knew or should have known that Plaintiff would have sued him but for a "mistake" concerning his identity.

Plaintiff argues a mistake prevented him from naming Morgan as a Defendant in the original Complaint. The affidavit of Plaintiff's counsel, however, explains Plaintiff was not certain of the identities of the officers who had taken part in arresting him and, therefore, did not name Morgan earlier. A plaintiff's lack of knowledge regarding a defendant's identity is not a "mistake" for purposes of Or. R. Civ. P. 23, subd. C. *See Gowin v. Multnomah County,* 28 F.Supp.2d 1188, 1190 nn. 2–3 (D.Or. 1998). *See also Bradford v. Dean Distrib. Co.,* 73 Or.App. 141, 141, 698 P.2d 489 (1985). Plaintiff did not make a "mistake" regarding Morgan's identity and, therefore, his Amended Complaint does not relate back to the date he filed his original Complaint. Plaintiff's claim against Defendant Morgan is time-barred.

## *CONCLUSION*

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (# 26) and **GRANTS** Defendants' Supplemental Motion for Summary Judgment (# 44).

IT IS SO ORDERED.